IN RE: APPLICATION OF REA CONSTRUCTION COMPANY FOR PERMIT TO BUILD ASPHALT MIXING PLANT IN THE CITY OF STATESVILLE.

(Filed 2 February, 1968.)

1. **Municipal Corporations § 25—**

A municipal board of adjustment is an administrative agency which acts in a *quasi*-judicial capacity and not as a law making body, and it has no authority to prohibit the construction of a building permitted by a zoning ordinance. G.S. 160-178.

2. **Same—**

Zoning ordinances are in derogation of the rights of private property and should be liberally construed in favor of freedom of use.

3. **Same—**

Where a zoning ordinance permits in a zoned district any use not inherently dangerous to urban areas and then further provides that mixing plants for concrete or paving materials are permitted in the district, the board of adjustment is without authority to deny an application for the construction of an asphalt mixing plant in the zoned district.

APPEAL by petitioner from *Gambill, J.,* at the 5 September 1967 Civil Session of IREDELL.

It is stipulated that this matter was properly before the superior court on a writ of *certiorari* issued by it for the review by that court of an order of the Board of Adjustment of the City of Statesville. The

order of the board revoked a permit issued by the city building inspector for the construction by Rea Construction Company of an asphalt mixing plant upon property owned by that company in an area of the city designated as an "M-1 General Industrial District."

It is further stipulated that the zoning ordinance provides as to such district:

"This district provides a place for the location of industrial and other uses which would be inimical or incompatible with general business areas. It is intended to permit in this district any use which is not inherently obnoxious to urban areas because of noise, odors, smoke, light, dust, or the use of dangerous materials.

"Within the M-1 districts as shown on the zoning map, incorporated by reference in section 22-17, the following regulation shall apply:

"(A) Permitted Uses.

\* \* \*

"(6) Mixing plants for concrete or paving materials \* \* \*."

It is further stipulated that the Board of Adjustment was duly created and appointed pursuant to G.S. 160-178 and pursuant to an ordinance of the city. This ordinance provides that an appeal may be taken to the board from a decision of the building inspector by any person aggrieved thereby, such appeal to be taken "within a reasonable time as provided by the rules of the board by filing \* \* \* a notice of appeal specifying the grounds therefor." The ordinance further provides that the board shall have the power "to hear and decide appeals where it is alleged that there is error in any order, requirement, decision, or determination made by the building inspector."

The record certified by the Board of Adjustment to the superior court pursuant to the writ of *certiorari* shows:

On 25 May 1967, the applicant applied for a permit. Such permit was granted 7 June 1967 by the city building inspector. On 23 June 1967, certain citizens and property owners of the city, for themselves and for all other citizens and property owners, gave notice of appeal to the Board of Adjustment, in which notice they assert that the decision of the building inspector to grant the permit was "erroneous and illegal and contrary to the public interest in that the building as proposed and the business of processing or fabrication of asphalt paving material is one which is inherently obnoxious to urban areas because of noise, odors, smoke and a type of acid dust fall-

out * * * all of which is in violation of Section 22-29 of the City Code." The Board of Adjustment on 3 July 1967 met and heard the parties. It adopted unanimously a motion that the grant of the building permit be revoked "on the basis that the operation of this plant in this zone would be, upon completion, inherently obnoxious to this urban area because of dust and noise." Prior to the hearing, there were filed with the board petitions of numerous property owners in the city asserting their opinion that "this type industry would lower property values by the noise and residue from such a plant and trucks going into and coming from the location would spread asphalt particles on a road which even now is a problem for the city to keep clean." Also filed with the board prior to the hearing were affidavits from residents of the City of Salisbury stating, in substance, that the Rea Construction Company has an asphalt plant in that city, the noise, dust and odors from which are obnoxious and have damaged the values of the properties owned by these affiants.

In its petition for the writ of *certiorari,* the Rea Construction Company alleged that the decision of the Board of Adjustment was illegal because: (1) G.S. 160-178 provides that appeals to such a board shall be taken by filing a notice of appeal "within such time as shall be prescribed by the Board of Adjustment by general rule," and the ordinance of the city provides that such appeal shall be taken by filing a notice of appeal "within a reasonable time as provided by the rules of the board," and, no rule having been adopted by the Board of Adjustment, this notice of appeal was filed too late, the petitioner having, in good faith, completed its purchase of the property in question and paid the purchase price 15 days after the issuance of the permit (the day the notice of appeal was filed), without knowledge of any appeal therefrom; (2) the proposed use of the property is expressly permitted by the zoning ordinance above quoted and the petitioner is therefore entitled, as a matter of right, to build and operate the proposed plant subject to valid regulations for the prevention of nuisances by undue smoke, dust, noise or other disturbances.

The superior court affirmed ·the action of the Board of Adjustment, holding that the board was acting within its sound discretion in revoking the issuance of the permit and that its finding of fact, supported by evidence and made in good faith, is final.

*Fleming, Robinson & Bradshaw for petitioner appellant.*
*L. Hugh West, Jr., for respondent appellee.*

LAKE, J. In the issuance of building permits, a city building

IN THE SUPREME COURT.

[272

In re Application of Construction Co.

inspector acts as an administrative agent and must follow the provisions of the zoning ordinance. *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. 2d 128. Where the applicant meets all the requirements of the ordinance he is entitled to the issuance of a permit as a matter of right and it may not lawfully be withheld. *Mitchell v. Barfield*, 232 N.C. 325, 59 S.E. 2d 810. A board of adjustment, authorized by G.S. 160-178, is also an administrative agency which acts in a *quasi*-judicial capacity, its principal function being to issue variance permits so as to prevent injustice by a strict application of the ordinance. *Lee v. Board of Adjustment, supra.* The board is not a law making body and has no power to amend the zoning ordinance either to permit the construction of a building prohibited by the ordinance or to prohibit the construction of one permitted by the ordinance. *In Re Markham*, 259 N.C. 566, 131 S.E. 2d 329; *Bryan v. Wilson*, 259 N.C. 107, 130 S.E. 2d 68; *Chambers v. Board of Adjustment*, 250 N.C. 194, 108 S.E. 2d 211; *In Re O'Neal*, 243 N.C. 714, 91 S.E. 2d 189; *James v. Sutton*, 229 N.C. 515, 50 S.E. 2d 300; *Lee v. Board of Adjustment, supra.* Thus, if the ordinance of the City of Statesville permits the construction in an M-1 general industrial district of the proposed asphalt plant, the building inspector acted properly in the issuance of the building permit in this instance and the Board of Adjustment had no authority to revoke the permit. We turn, therefore, to the ordinance to see whether such a building is authorized in such district.

A zoning ordinance, like any other legislative enactment, must be construed so as to ascertain and effectuate the intent of the legislative body. *Bryan v. Wilson, supra.* A zoning ordinance, however, is in derogation of the right of private property and provisions therein granting exemptions or permissions are to be liberally construed in favor of freedom of use. *In Re Couch*, 258 N.C. 345, 128 S.E. 2d 409; *In Re Appeal of Supply Co.*, 202 N.C. 496, 163 S.E. 462.

The ordinance in question first states, in general terms, that it is intended to permit in an M-1 general industrial district any use which is not "*inherently* obnoxious to urban areas because of noise, odors, smoke, light, dust or the use of dangerous materials." (Emphasis added.) It does not, however, stop with this declaration of intent. It goes further and expressly provides that "mixing plants for concrete or paving materials" are permitted in such districts. Asphalt is obviously a paving material. Whether this provision in the ordinance be regarded as a legislative provision for an exception to the general prohibition of a use which is inherently obnoxious to urban areas because of noise, odors, smoke, light, dust, or the use of dangerous materials, or be regarded as a declaration by the legislative

body that an asphalt mixing plant is not inherently obnoxious, the ordinance expressly permits the construction and use of an asphalt plant in an M-1 general industrial district. The Board of Adjustment has no authority to prohibit that which the city council has expressly permitted in the ordinance. Its order directing the revocation of the permit issued by the building inspector was, therefore, in excess of its authority.

This is not to say that an asphalt plant constructed and operated in an M-1 general industrial district is not subject to regulations, otherwise valid, designed to prevent its operation in such a manner as to produce obnoxious noise, odors, smoke, or dust. The question is not before us in the present case. See *Mitchell v. Barfield, supra.*

It is also unnecessary for us to consider the contention of the appellant that the protestants' notice of appeal to the Board of Adjustment was not filed within the time allowed therefor; or its contention that, having purchased the property in good faith without knowledge of the contemplated appeal and after waiting 15 days to see if such appeal would be taken, the appellant acquired a right to the permit which it would not otherwise have.

The order of the superior court is hereby reversed. The superior court will remand this proceeding to the proper city authorities with direction that a permit issue, unless cause for denial of such permit has arisen since the order entered by the Board of Adjustment.

Reversed.