DEPARTMENT OF TRANSPORTATION v. RICHARD F. CRAINE AND WIFE, MAGDELENE CRAINE

No. 8724SC302

(Filed 15 March 1988)

**Highways and Cartways § 5.1— abutter's right of access retained—failure to take into account in determining fair market value of remaining property**

   Defendants retained their abutter's right of access to a highway despite the relocation of a portion of their driveway on the new State right-of-way, and the trial court therefore erred in excluding evidence by an expert witness that no damages for the driveway were included in his estimation of the value of defendants' land after taking and in refusing to give plaintiff's requested instruction that defendants still had full right of access and this should be taken into account in arriving at the fair market value of the remaining property. N.C.G.S. § 136-89.53.

APPEAL by plaintiff from *Hyatt, J. Marlene, Judge.* Judgment entered 3 October 1986 in Superior Court, MADISON County. Heard in the Court of Appeals 19 October 1987.

This is a condemnation proceeding instituted by plaintiff on 19 November 1984 to acquire a portion of defendants' property for State Highway Project 8.1860106. Defendants owned a tract of land containing 15.94 acres, located on the west side of U.S. 25-70 in Madison County. The property to be appropriated contained 1.28 acres and was the portion of defendants' land abutting on the west side of U.S. 25-70 for a distance of approximately 600 feet. Of the land to be appropriated, 1.19 acres was for a new right-of-way and 0.09 acres was for a temporary construction easement for driveway relocation.

By consent order, all issues were resolved except the issue of damages.

The consent order states in part:

INTEREST OR ESTATE TAKEN:

Fee simple title to right of way for all purposes for which the plaintiff, its successors and assigns, is authorized by law to subject the same, and a temporary construction easement for driveway relocation and reconnection to expire upon the completion of Project 8.1860106, Madison County, at which time

said temporary construction easement will revert to the owners.

That the said property appropriated is described as follows:

Being that area denoted as "New Right of Way" and "Temporary Construction Easement" as shown on the plat filed by the plaintiff in this action . . . , said plat . . . is a correct portrayal of what it purports to show and is a fair and accurate representation of the property affected by the appropriation and property rights appropriated.

The case was heard on the issue of just compensation by Judge Hyatt, sitting with a jury.

Defendant, Richard Craine, testified that prior to the taking, their existing driveway was not on any part of a State right-of-way, with the exception of 0.06 acres that they utilized to gain access to U.S. 25-70 and that after their driveway was relocated, a portion of their driveway existed on the new right-of-way owned by the State. Defendant also testified that they still retained access to U.S. 25-70.

Defendants' value witness, Gerald Young, testified to the effect that defendants' entire property had a fair market value of $65,500 before the taking; that the fair market value of the remaining property after the taking was $18,500, resulting in a damage figure of $47,000. Mr. Young's testimony for valuing the property was based solely on the following criteria: That the driveway to defendants' remaining property is on State property; that the State has a right to fence off defendants' access at any time; that as a result of this right defendants do not have an entrance to their property except from a back way; and that defendants would have to acquire a new right-of-way. Also, on cross-examination by plaintiff, Mr. Young acknowledged that defendants have full legal right of access to the highway subject only to driveway regulations.

Mr. Francis Naeger, the first expert witness for plaintiff, testified to the effect that defendants' entire property had a fair market value of $58,900; that the fair market value of the remaining property after the taking was $49,600, resulting in a damage figure of $9,300. Mr. Naeger took into consideration the following criteria in assessing the value of defendants' property. He re-

searched the property and looked at (1) the sales price of other properties sold in the area; (2) the size of the property; (3) the frontage of the property; (4) the access to the property; (5) the topography of the property; and (6) the utilities. Mr. Naeger also testified that plaintiff specifically rebuilt defendants' driveway so that they could have access to the highway; that the temporary easement for construction on defendants' land was for reconstruction of the driveway; and that when he arrived at a per acre value for the property after the taking, part of the consideration of the per acre value was for change of access due to the relocation of the driveway.

Mr. Charles Torian, plaintiff's other expert witness, testified to the effect that defendants' entire property had a fair market value of $56,100; that the fair market value of the remaining property after the taking was $48,100, resulting in a damage figure of $8,000. Mr. Torian based his appraisal of the property on his inspection of the property and on his comparison of the sales price of other properties sold in the area. Mr. Torian testified that in estimating the after value of defendants' property, he did not include the fact that part of defendants' driveway was on the State right-of-way; nor did he include any decrease in value to the property based on the State's right to use the right-of-way at any time.

The jury found that defendants were entitled to recover $26,500 from plaintiff. From the signing and entry of judgment, plaintiff appealed.

*Lacy H. Thornburg, Attorney General, by Alfred N. Salley, Assistant Attorney General, for plaintiff-appellant.*

*Long, Howell, Parker & Payne, P.A., by Ronald W. Howell, for defendant-appellees.*

JOHNSON, Judge.

Plaintiff raises three Assignments of Error in this appeal.

By its first Assignment of Error, plaintiff contends that the trial court erred when it allowed the jury, in arriving at its verdict, to consider evidence that plaintiff had acquired the right to deny defendants access to U.S. 25-70 from their abutting remainder without further compensation. We agree.

Every erroneous ruling in the admission or exclusion of evidence does not *ipso facto* entitle the appealing party to a new trial. He must show that he was prejudiced and that the erroneous ruling probably influenced the jury verdict. *Emerson v. Carras*, 33 N.C. App. 91, 234 S.E. 2d 642 (1977).

At trial, there was a divergence of opinion by plaintiff and defendants based on the testimony of each party's witness' appraisal of defendants' land after the taking. One of plaintiff's expert witnesses, Francis Naeger, testified that his only consideration for damages concerning defendants' driveway was for the fact that it was relocated and slightly narrower. Mr. Naeger did not give any consideration in arriving at an opinion as to the value that the defendants' driveway was on a portion of the State's new right-of-way. When asked to explain why he made no such consideration, plaintiff's expert witness, Naeger, was not permitted to do so. On cross-examination, defendants' counsel was allowed, over objection, to question Mr. Naeger, that he did not consider as a damage factor that defendants' driveway now existed on a portion of the new State right-of-way.

At trial, it was plaintiff's contention that defendants retained their abutter's right of access to U.S. 25-70, despite the relocation of the driveway, and that the only way the State could take their abutter's right of access, requiring further compensation, was if the right-of-way was created for a controlled-access facility. It was the exclusion of this evidence by the trial court, plaintiff contends is erroneous.

On the other hand, no objection was made to defendants' value witness' testimony that his basis for determination in value of defendants' property was because defendants' driveway was now relocated on the new State right-of-way and that the State could deny access at any time. Thus, at trial, it was defendants' contention that since the State acquired in fee simple the right-of-way where a portion of their reconstructed driveway exists, then their direct access to the highway is now permissive and therefore their access is subject to being cut off at any time by the State. As a result, defendants contend they don't abut a State highway but a State right-of-way.

It is generally recognized that the owner of land abutting a highway has a right beyond that which is enjoyed by the general

public; a special right of easement in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. *State H'wy Comm'n v. North Carolina Realty Corp.*, 4 N.C. App. 215, 166 S.E. 2d 469 (1969).

By statute, an abutter's right of access can be appropriated by the State but it cannot be taken without just compensation. G.S. 136-89.51 states in part:

> The Department of Transportation is authorized so to design any controlled-access facility and so to regulate, restrict, or prohibit access as best to serve the traffic for which such facility is intended. . . . No person shall have *any right* of ingress and egress to, from or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time by the Department of Transportation. (Emphasis added.)

G.S. 136-89.52 which deals with acquisition of property and property rights by the State for controlled-access facilities states in part:

> The property rights acquired under the provisions of this Article may be in fee simple or an appropriate easement for right-of-way in perpetuity. . . .
>
> Along new controlled-access highway locations, abutting property owners shall not be entitled to access to such new locations, and no abutter's easement of access to such new locations shall attach to said property.

Furthermore, G.S. 136-89.53 states in part:

> The Department of Transportation may designate and establish controlled-access highways as new and additional facilities or may designate and establish an existing street or highway as included within a controlled-access facility. When an existing street or highway shall be designated as and included within a controlled-access facility the owners of land abutting such existing street or highway shall be entitled to compensation for the taking of or injury to their easement of access. . . .

A controlled-access facility is a "State highway, or section of State highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property, . . . shall have only a controlled right or easement of access." G.S. 136-89.49. It is also the term for a limited access highway where the Department of Transportation (hereinafter DOT) acquires the legal right to cut off entirely the abutting owner's right of direct access to and from the highway on which his property abuts. *Barnes v. North Carolina State H'wy Comm'n*, 257 N.C. 507, 126 S.E. 2d 732 (1962).

When DOT designates property for right-of-way acquisition, the plans submitted for such projects must indicate which right-of-way or other interests in real property is acquired or access is controlled. *See* G.S. 136-19.4. Thus, when it is determined that a highway should be relocated and established as a controlled-access facility, limiting abutter's access thereto, notice of such fact is set forth in detail in plans and petitions for condemnation for the information of landowners and the appraisers in assessing the damages to the property. Also, the symbol C/A is usually placed on the map or plat of proposed construction to indicate controlled access. *See North Carolina State H'wy Comm'n v. Asheville School, Inc.*, 276 N.C. 556, 173 S.E. 2d 909 (1970).

Under the facts of the case *sub judice*, there is no indication that the right-of-way appropriated by DOT was designated as a controlled-access facility, nor was U.S. 25-70 designated as a controlled-access facility. The plat did not contain the C/A symbol or any symbol that indicated the highway or right-of-way was a controlled-access facility. Therefore, we believe the record clearly establishes that U.S. 25-70 is a conventional or non-controlled-access highway, and that the addition of the new right-of-way did not convert it to a controlled-access facility. Nevertheless, the court below deemed that defendants' previous access to the highway no longer existed and that defendants' access only existed at the State's new right-of-way.

The divergence of opinion of the parties concerning what was the true issue appears to us to be based in part on the potential of whether defendants' access to the highway could be cut off at any time due to the fact that their relocated driveway existed on a portion of the new State right-of-way. Thus, plaintiff's and defendants' arguments are premised on a point in time. In other

words, defendants' contention is that their access is permissive only because at any point in time their access, by their driveway, can be cut off, whereas, plaintiff's contention is that, yes, their access can be cut off at any time, but if and only if, the highway is converted to a controlled-access facility. It is at that time that plaintiff states defendants should be further compensated whereas defendants state compensation is due now because they don't know when or where the State will cut off permissive use of their driveway.

The record in the case *sub judice* reveals no evidence that U.S. 25-70 was being converted from a conventional or non-controlled-access highway to a controlled-access facility. There is no indication that after the project's completion, defendants' direct access to the highway was denied. We perceive that there is no statute in force which compensates a landowner, whereby DOT, after acquiring property to extend a right-of-way or a non-controlled-access highway, has permanently cut off whatever abutter's right of access the owner previously had. The consent order is devoid of any language indicating a controlled-access facility or of plaintiff's denying the right of access to defendants. Even in oral argument, plaintiff conceded that the defendants retained a right of access to the highway. When the State interferes with access of a property owner, the question is always whether a reasonable means of ingress and egress remains or is provided. *State H'wy Comm'n v. Yarborough*, 6 N.C. App. 294, 170 S.E. 2d 159 (1969).

DOT, despite having fee simple title in the right-of-way, is placed in check by G.S. 136-89.53. The legislative intent of G.S. 136-89.53 addresses what defendants are afraid of.

It is true, the State has a right to cut defendants' access off at any time. But the State can only restrict their right of access when the highway is a controlled-access facility or is being converted to a controlled-access facility. *Barnes, supra.* It is at that point in time that the legislature has delegated a remedy to the deprived landowner of his abutter's right of access when it is denied and specified on a plat by DOT. A non-controlled-access highway has no need for these types of remedies until the situation arises where it is necessary to effect measures for the safety of the public and in the public interest. G.S. 136-89.51.

The effect of controlled-access facilities is for the public, and when a private citizen's abutter's right of access is denied, he is entitled to just compensation. But where the State acquires a right-of-way abutting an existing non-controlled-access highway, and the landowner's driveway is relocated at another point to a point where their driveway is part of the right-of-way but is still connected to the highway, they still retain their abutter's right of access and have not been denied any rights. The perpetual easement or fee simple in the land acquired by DOT is necessary for construction and the landowner is justly compensated for this taking.

Thus, even where the fee of a conventional highway or right-of-way as in the case *sub judice*, is in the State, it is subject to an easement of access appurtenant to the abutting land. Defendants have access from their property to the highway to which they had access prior to this proceeding. Thus, defendants retained their abutter's right of access to a conventional highway even though part of their driveway exists on the new right-of-way. We believe that the erroneous ruling by the court probably influenced the jury verdict. Therefore, the trial court erred in excluding from the jury's consideration, evidence that defendants retained their right of access to the highway as an abutting landowner and thereby prejudiced plaintiff in the presentation of its case to the jury.

We have considered plaintiff's second Assignment of Error, find it to be meritless and without need for discussion.

Finally, plaintiff, in its third Assignment of Error contends that the trial court erred in failing to tender plaintiff's special jury instruction. We agree.

Plaintiff tendered the following special jury instruction to the court:

> I charge you that the owners of land abutting an existing highway have a special right of easement in the public road for access purposes, and this is a property right which cannot be taken from them without due compensation.

> From the evidence in this action, I charge you that the defendants' easement of access has not been interfered with and you will consider the fact that defendant has full right of

access to the highway and that the Department of Transportation has not taken the right to block that access in this action in arriving at the fair market value of the remaining property immediately after the taking under the rules of law I have theretofore given you.

As we have heretofore noted, the problem at issue in the case *sub judice* arose when the trial court did not allow the jury to consider testimony by plaintiff's expert witness, Francis Naeger, that no damages were included in his estimation of the value of defendants' land after the taking because defendants retained their abutter's right of access to the highway despite the relocation of a portion of defendants' driveway on the new State right-of-way. We believe that the special instruction tendered by plaintiff would have removed from the jury's consideration any potential permanent loss of defendants' abutter's right of access alleged by defendants.

When a party aptly tenders a written request for a specific instruction which is correct in itself and supported by the evidence, the failure of the court to give the instruction, in substance at least, is error. *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331 (1954).

We have previously determined that defendants retained their abutter's right of access to the highway despite the fact that defendants' driveway is on a portion of the new State right-of-way. Furthermore, the admission of evidence that in effect indicated that defendants had no access to the highway was incompetent and as a result augmented defendants' recovery. Plaintiff's special instruction was to the effect not to consider evidence that the State could take away defendants' abutter's right of access. Plaintiff's requested special jury instruction was correct, in substance at least, and had the jury been properly instructed we believe that they would have arrived at a different verdict as to the amount of damages. Accordingly, the failure of the trial court to tender plaintiff's special instruction to the jury was error.

Therefore, for all the aforementioned reasons, we are of the opinion that plaintiff is entitled to a

---

New trial.

Judges WELLS and COZORT concur.