GERALD DONNELLY, PETITIONER v. BOARD OF ADJUSTMENT OF THE VILLAGE OF PINEHURST, RESPONDENT

No. 8920SC607

(Filed 7 August 1990)

1. **Municipal Corporations § 30.6 (NCI3d)— zoning variance— privacy fence—through lot**

    Both the Board of Adjustment and the trial court correctly determined that petitioner's lot is a "through lot" under the Pinehurst zoning ordinances, so that a variance was required for a fence over three feet six inches in height, because the language of the ordinance clearly indicates that an interior lot bordered by a lane and a highway is a through lot; the spirit of the ordinance is to preserve the appearance of the town with particular regard to the fact that Pinehurst greatly profits from maintaining the golf and vacation trade; regardless of whether petitioner has direct access to his lot from Highway 211, the highway abuts his property and the public has visual access to his lot from both the highway and from Travis Lane; moreover, petitioner's fence was more than six feet in height and violated a section of the ordinance applicable to any lot which limits rear yard fences to six feet in height.

    **Am Jur 2d, Zoning and Planning §§ 41, 90, 91, 123.**

2. **Municipal Corporations § 30.6 (NCI3d)— zoning variance— privacy fence—definition of fence type**

    A petitioner should not be required to obtain a variance from a Pinehurst zoning ordinance on the ground that he erected

a nonconforming type of fence without a more specific defini-
tion in the zoning ordinance as to what constitutes picket
and stockade fences. Words are to be given their ordinary
meaning and significance when interpeting zoning ordinances
and the language of the ordinances is to be construed narrowly
against the governing authority.

**Am Jur 2d, Zoning and Planning §§ 41, 90, 91, 123.**

3. **Municipal Corporations § 30.6 (NCI3d)— zoning variance—
findings and conclusions—not required**

The Village of Pinehurst Board of Adjustment had no
duty to make findings and conclusions on the merits of peti-
tioner's request for a variance for a privacy fence where the
requested variance would be directly contrary to the zoning
ordinance and the Board had no authority to grant petitioner's
request.

**Am Jur 2d, Zoning and Planning §§ 41, 90, 91, 123.**

Judge EAGLES dissenting.

APPEAL by petitioner from judgment entered 31 March 1989
by *Judge Thomas W. Seay* in MOORE County Superior Court. Heard
in the Court of Appeals 14 November 1989.

*Douglas R. Gill for petitioner-appellant.*

*Brown, Robbins, May, Pate, Rich, Scarborough & Burke, by
W. Lamont Brown, for respondent-appellee.*

PARKER, Judge.

This appeal involves the Board of Adjustment of the Village
of Pinehurst's denial of a variance to allow petitioner to maintain
a fence across the rear of his lot in violation of local zoning or-
dinances. Petitioner owns Lot 109, Travis Lane in Pinehurst, North
Carolina. The lot fronts on Travis Lane and abuts State Highway
211 on the rear. Highway 211 separates Pinehurst from Taylortown,
a recently incorporated municipality. The highway is a heavily
traveled road. The property across the highway from petitioner's
property is zoned commercial and includes an electric power substa-
tion and an electric supply store. Sometime prior to 27 April 1988
petitioner built a fence across the rear of this lot to screen it
from Highway 211 and the commercial properties. The fence was

approximately six feet high and it was placed on a one- to two-foot earth berm, yielding a fence approximately seven feet higher than the normal level of the surrounding ground. The fence was constructed of closely spaced, narrow, wooden slats, with each slat shaped at the top. The slats were affixed to horizontal members. Petitioner built the fence without applying for, or receiving, a building permit in advance. Sometime after he had finished construction of the fence, petitioner requested a variance from the building and zoning inspector for the Village. The inspector denied the variance and petitioner appealed to the Board of Adjustment of the Village of Pinehurst (herein "the Board"). On appeal to the Board, petitioner argued that the fence was permitted under the zoning ordinance and, in the alternative, that a variance should be granted. The Board denied the appeal on the grounds that the fence violated the zoning ordinance.

Donnelly then petitioned the Superior Court for a writ of certiorari. The writ was granted, and the trial court affirmed the denial of the variance.

Petitioner brings forward three assignments of error. First, petitioner assigns error to the court's conclusion that petitioner's lot was a "through lot" under the ordinance, requiring a variance for a rear fence higher than 3½ feet. Second, petitioner contends that the trial court erred in determining that the fence was a "stockade fence" rather than a "picket fence" as defined by the ordinance. Finally, petitioner asserts that the court erred in failing to remand to the Board of Adjustment because petitioner contends that the Board failed to make findings or conclusions to support the denial of the variance.

The grant or denial of a variance is the exercise of the board's quasi-judicial power. In exercising this power the board investigates the facts. See In re Markham, 259 N.C. 566, 131 S.E.2d 329, cert. denied, 375 U.S. 931, 84 S.Ct. 332, 11 L.Ed.2d 263 (1963). General Statute 160A-388 states that "[e]very decision of the board [of adjustment] shall be subject to review by the superior court by proceedings in the nature of certiorari." G.S. 160A-388(e). In reviewing the decision of the board under this statute, the Superior Court sits as an appellate court. See Concrete Co. v. Board of Commissioners, 299 N.C. 620, 626-27, 265 S.E.2d 379, 383 (1980).

[1]    As to his first assignment of error, petitioner contends that, under the definitions contained in the Pinehurst Zoning Ordinance,

his lot was not a "through lot"; therefore, his construction of a six-foot fence across the rear of the lot was not a violation of the zoning ordinance, and he should not have been required to apply for a variance before a building permit was issued to him. The Pinehurst Zoning Ordinance provides:

> 6.10.1(a) Fences and walls or similar structures not over three feet six inches (3'6") may project into or may enclose any front or side yard, and fences or walls, or similar structures enclosing rear yards may be six feet (6') high. If a property owner's rear lot line borders on the side lot line of another property owner, the side yard height limitation of three feet six inches (3'6") applies to any fence erected on such property line for the length contiguous to said side yard.

> . . . .

> 6.10.6 Fences or walls or similar structures on through lots are to be limited to three feet six inches (3'6") in height.

The ordinance defines a "through lot" as "[a]n interior lot having frontage on two streets." A "street" is defined as "[a] thoroughfare which affords the principal means of access to abutting property, including avenue, place, way, drive, lane, boulevard, *highway*, road and any other thoroughfare, except an alley." (Emphasis added.) Petitioner concedes that his lot fronts on Travis Lane and abuts State Highway 211 on the rear. There was also evidence that Highway 211 connects with Travis Lane, giving petitioner indirect access to his property by way of Highway 211. Petitioner argues, however, that Highway 211 is not a "street" within the definition of the ordinance because Highway 211 is a restricted access highway, he cannot gain direct access from Highway 211, and his only access to the lot is from Travis Lane.

"A zoning ordinance, like any other legislative enactment, must be construed so as to ascertain and effectuate the intent of the legislative body." *In re Application of Construction Co.,* 272 N.C. 715, 718, 158 S.E.2d 887, 890 (1968) (citing *Bryan v. Wilson,* 259 N.C. 107, 130 S.E.2d 68 (1963)). Our Supreme Court has held that, with regard to zoning ordinances, "[t]he best indicia of [legislative] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Board of Commissioners,* 299 N.C. at 629, 265 S.E.2d at 385.

Given these *indicia* of legislative intent, both the Board and the trial court, in our opinion, were correct in determining that petitioner's lot was a "through lot" as defined by the ordinance and that a variance would be required for petitioner to maintain a fence greater than three feet six inches in height across the rear of the lot. The language of the ordinance clearly indicates that an interior lot bordered by a lane and a highway is a "through lot." The spirit of the ordinance is to preserve the appearance of the town with particular regard to the fact that Pinehurst greatly profits from maintaining the golf and vacation trade. This spirit is apparent throughout the ordinance. In addition to the section governing the height of fences on "through lots" (6.10.6), there are also sections promoting the use of hedges, shrubs and trees in lieu of fences and walls (6.10.5), restricting fences or walls on lots abutting lakes or golf courses (6.10.2 and 6.10.3), and requiring extensive screening of visually offensive structures such as commercial fencing (6.10.7), residential vehicular parking (6.12), and outdoor spas (6.13). We recognize that "through lots" are highly visible lots since they border on two thoroughfares. With regard to "through lots" the goal of the ordinance is to regulate not only the fences on these lots, but also to require mandatory front, rear and side yards and to prohibit any encroachment of architectural features into these yards. Pinehurst Zoning Ordinance § 6.5. Regardless of whether petitioner has direct access to his lot from Highway 211, the highway abuts his property and the public has "visual access" to his lot from both the highway and from Travis Lane. Petitioner was, therefore, properly required to seek a variance for his fence.

Moreover, as the evidence before the Board showed, petitioner's fence was in excess of six feet in height and also violated 6.10.1(a) which is applicable to any lot and limits rear yard fences to six feet in height.

[2]  Second, petitioner assigns error to the trial court's determination that his fence was a "stockade fence" rather than a "picket fence." The Pinehurst Zoning Ordinance permits only the following types of fences on individual residential lots: picket, post and rail, wrought iron, brick, and stone. Sections 5.3.9 and 6.10.1(b). The ordinance provides that "[t]he purpose of [the section designating acceptable types of fencing] is to allow fences within districts which are architecturally compatible with each other, preserving the flex-

ibility of fences in the rural areas." Section 6.10.1(b). The types of fences are not further defined by the ordinance.

Petitioner contends that his fence is a "picket fence" because it is comprised of numerous, narrow, vertical boards, "dog-eared at the top" and affixed to horizontal members. In support of his contention petitioner points to the following definition of "picket fence" and "picket" appearing in *Webster's New World Dictionary*:

*picket fence*, a fence made of upright pales or stakes.

*picket*, a stake or slat usually pointed, used as an upright in a fence.

Petitioner contrasts this definition with that for "stockade"—"a barrier of stakes driven into the ground side by side for defense against attack [or] any similar enclosure." Webster's New World Dictionary (College Ed. 1968). The evidence presented to the Board showed a fence of closely-spaced, narrow, wooden slats, flat at the top with slanted sides.

When interpreting zoning ordinances, words are given their ordinary meaning and significance. *Penny v. Durham*, 249 N.C. 596, 600, 107 S.E.2d 72, 76 (1959). The language of the ordinance is also construed narrowly against the governing authority. *See id.* at 601, 107 S.E.2d at 76. Based on the foregoing rules of construction, without a more specific definition in the zoning ordinance as to what constitutes picket and stockade fences, petitioner should not be required to obtain a variance on the ground that he erected a non-conforming type of fence.

[3] Finally, petitioner assigns as error the trial court's failure to remand to the Board for proper findings and conclusions to support the denial of the variance. We note that petitioner has not argued on appeal that he was entitled to a variance; he has merely argued that he was not required to obtain a variance or, alternatively, that the Board's denial of the variance should be overturned because the Board failed to properly support the denial with findings and conclusions. We have already determined that petitioner was required to obtain a variance. Petitioner's contention that the Board's denial of the variance cannot be upheld because the Board failed to make findings and conclusions is without merit.

General Statute 160A-388 states:

> When practical difficulties or unnecessary hardships would result from carrying out the strict letter of a zoning ordinance, the board of adjustment shall have the power, in passing upon appeals, to vary or modify any of the regulations or provisions of the ordinance relating to the use, construction or alteration of buildings or structures or the use of the land, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.

G.S. 160A-388(d). Our Courts have read this statute to require the petitioner to demonstrate that he would suffer "unnecessary hardship" in order to qualify for a variance. *In re Markham*, 259 N.C. at 572, 131 S.E.2d at 334; *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1 (1946). The board, however, has the power to grant a variance only where it can do so within the spirit of the zoning ordinance; the board is prohibited from authorizing a structure which conflicts with the general purpose of the ordinance, "for to do so would be an amendment of the law and not a variance of its regulations." *Lee v. Board of Adjustment*, 226 N.C. at 112, 37 S.E.2d at 132, 168 A.L.R. at 6.

As discussed above, the spirit and goal of this ordinance are to preserve the appearance of the town by strictly regulating, on the most visible portions of properties, *e.g.*, the areas abutting streets, golf courses, and lakes, those structures identified as visually undesirable. Read as a whole, the ordinance is clearly intended to exclude tall privacy fences, other than live fences, from highly visible locations. In the words of the Board during the hearing on petitioner's request for the variance, "[we] just don't like to see a wall city." The requested variance would be directly contrary to the zoning ordinance and, therefore, the Board had no authority to grant petitioner's request. *Id.; Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 648, 334 S.E.2d 103, 104 (1985). In such a situation this Court has held that the board of adjustment has no duty to make findings and conclusions on the merits of the request. *Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. at 648, 334 S.E.2d at 104.

The judgment of the trial court is affirmed.

Affirmed.

Judge ORR concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent. As the majority notes, when interpreting zoning ordinances, we should give words their ordinary meaning and significance. *Penny v. Durham*, 249 N.C. 596, 600, 107 S.E.2d 72, 76 (1959). The ordinary meaning and significance of "access to abutting property" as used in the ordinance's definition of a "street" is not satisfied by mere "visual access or being able to *look* at or onto the property." In this context "access" means the right to ingress and egress without restriction. *Dept. of Transportation v. Craine*, 89 N.C. App. 223, 229, 365 S.E.2d 694, 699, *dismissal allowed and disc. rev. denied*, 322 N.C. 479, 370 S.E.2d 221 (1988).

"In real property law, the term 'access' denotes the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the highway without obstruction." Black's Law Dictionary 13 (5th edition 1979); *see also Dept. of Transportation v. Craine*, 89 N.C. App. 223, 365 S.E.2d 694 (1988).

Here, because "street" is defined by the ordinance as "[a] thoroughfare which affords the principal means of access to abutting property, including avenue, place, way, drive, lane, boulevard, highway, road and any other thoroughfare, except an alley" and "through lot" is defined by ordinance as an "interior lot having frontage on two streets," I conclude that petitioner's lot is not a through lot because it does not have frontage on two streets. Since there is no vehicular access from Highway 211 to petitioner's lot, his lot is not a through lot as defined by the ordinance. Accordingly his rear fence is subject to a six foot height limitation and the order of the Board of Adjustment was erroneously entered. The superior court erred when it affirmed the Board's order.

I am sensitive to the aesthetic concerns which motivate the Village of Pinehurst Board of Adjustment in construing their fence ordinance. However, our courts have consistently held that when municipalities restrict the rights of private citizens in the use of their own property, our municipal ordinances must be construed narrowly against the municipality. *Penny v. Durham*, 249 N.C. 596, 601, 107 S.E.2d 72, 76 (1959).