PREMIER PLASTIC SURGERY CENTER, PLLC; GENESIS VENTURES, LLC; AND VICTOR S. FERRARI, M.D., F.A.C.S., PETITIONER-APPELLANTS v. THE BOARD OF ADJUSTMENT FOR THE TOWN OF MATTHEWS; AND THE TOWN OF MATTHEWS, RESPONDENT-APPELLEES

No. COA10-863

(Filed 19 July 2011)

## 1. Preservation of issues— failure to argue—issue abandoned

Petitioners in a zoning case abandoned their argument that the trial court erred by applying the wrong standard when reviewing the decision of the Board of Adjustment to deny petitioners' application for a variance. Petitioners failed to provide any reason or argument in support of their assertion.

## 2. Zoning— application for variance—erroneously denied

The trial court erred in a zoning case by finding that the Board of Adjustment had no authority to grant petitioner the requested variance. The trial court's reliance on *Donnelly*, 99 N.C. App. 702, was erroneous as petitioners' sign was not, as a matter of law, contrary to the zoning ordinance. Moreover, the variance petitioners sought was not a use variance but was an area variance.

## 3. Zoning— variance—denial of petition—findings of fact insufficient

The trial court erred in a zoning case by concluding that the Board of Adjustment made sufficient findings of fact to support its denial of petitioners' application for a variance. As the trial court erred in concluding the variance was directly contrary to the zoning ordinance, it also erred in concluding the Board had no duty to make sufficient findings. Furthermore, the Board's findings of fact lacked the specificity necessary for a reviewing court to determine whether the Board acted arbitrarily or committed errors of law.

## 4. Zoning— sign permit—vested rights not acquired—estoppel or laches inapplicable

The trial court did not err in a zoning case by concluding that petitioners did not acquire vested rights in a sign permit and that the Town of Matthews was not barred by estoppel or laches from revoking the permit. Petitioners did not appeal the Board of Adjustment's decision to deny petitioner's appeal of the revocation of the sign permit.

Appeal by Petitioner from Judgment entered 21 January 2010 by Judge James W. Morgan in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 January 2011.

*Essex Richards, P.A., by Norris A. Adams, II, attorney for Petitioner-appellants.*

*Cranford, Buckley, Schultze, Tomchin, Allen & Buie, P.A., by Charles R. Buckley, III, attorney for Respondent-appellees.*

HUNTER, JR., Robert N., Judge.

Premier Plastic Surgery Center, PLLC, Genesis Ventures, LLC, and Victor S. Ferrari, M.D., F.A.C.S. ("Dr. Ferrari") (collectively "Petitioners") appeal the trial court's 21 January 2010 Order affirming the decision of the Town of Matthews Board of Adjustment ("the Board") to deny Petitioners' application for a variance to the Town of Matthews' sign ordinance. We reverse, in part, and remand, in part.

## I. Factual and Procedural History

This dispute arises from Petitioners' construction of a sign in front of Dr. Ferrari's business, which is located in Matthews, North Carolina. Petitioners operate a medical facility at 1635 Matthews Township Parkway on one of four lots that are part of a multi-lot business development. When the lots were originally developed, all four lots shared one drive that permitted ingress and egress from Matthews Township Parkway. Later, a second drive was constructed between Petitioners' building and the other buildings in the development. The development sits in a curve of Matthews Township Parkway and the two drives are separated by approximately 500 feet. At the first drive stands a monument-style sign providing signage for several of the tenants in the development. This sign, however, cannot accommodate the current number of tenants. Additionally, as a result of the curve in the parkway, it is difficult, if not impossible, to see the second drive from the first.

Petitioners testified that patients routinely have trouble locating the medical practice, drive past the entrance, and have to turn around in their attempt to find it. Dr. Ferrari claims that ninety percent of first-time patients experience this problem and are often up to thirty minutes late as a result. Because he performs surgeries on-site, Dr. Ferrari is concerned that paramedics would be similarly delayed if attempting to respond to a medical emergency that could arise during surgery.

PREMIER PLASTIC SURGERY CTR., PLLC v. BD. OF ADJUST. FOR TOWN OF MATTHEWS

[213 N.C. App. 364 (2011)]

Seeking to cure these problems, in late 2006, Dr. Ferrari's wife met with Town of Matthews staff to discuss the construction of a sign outside the medical practice, but was told a sign was not permitted. Petitioners subsequently hired a local sign company, Comco Signs, Inc. ("Comco"), to determine if they could put a sign on the front of the building. The vice-president of Comco, Randy Ulery, suggested Dr. Ferrari construct a monument sign, assured Dr. Ferrari that the Town of Matthews would allow it, and said he would look into the matter. On 4 April 2007, Charlie D. Butler, zoning inspector for the Mecklenburg County Land Use and Environmental Services Agency ("MCLUESA")—which administers permits for the Town of Matthews—issued a sign permit authorizing Comco to construct a sign outside Petitioners' business.

Approximately two and one half months later, in early June 2007, Comco constructed a monument sign in front of Petitioners' business in accordance with the permit at an expense of $7,210. Zoning Inspector Butler was present the day of the sign's construction and helped determine its proper placement. Approximately one week after the sign was erected, however, MCLUESA notified Petitioners that the sign permit had been revoked stating the permit was issued in error because the sign violated section 153.144(A) of the Matthews Zoning Code.

Petitioners appealed the permit revocation to the Matthews Board of Adjustment. The Board denied the appeal at its 8 November 2007 meeting and notified Petitioners of their right to appeal the denial to superior court or to draft a text amendment to the zoning ordinance. Petitioners filed an application for a text amendment to the ordinance, which was denied by the Board at their 14 April 2008 meeting.

On 8 May 2008, Petitioners applied to the Board for a variance to section 153.144(A) of the Matthews Zoning Code that would allow the sign to remain in place. Following a hearing on the matter, the Board denied the variance by a vote of four to one, and notified Petitioners in writing on 11 July 2008.

On 8 August 2008, Petitioners filed a petition for *writ of certiorari* to the Mecklenburg County Superior Court pursuant to N.C. Gen. Stat. § 160A-388(e2) (2009). In their petition, Petitioners alleged, *inter alia*, the Board's decision to deny the variance was arbitrary, capricious, and contrary to statute and case law. The petition was granted on 23 September 2008 and the case came on for hearing during the 14 December 2009 session of the Mecklenburg County Superior

Court, Judge James W. Morgan presiding. Judge Morgan affirmed the Board's denial of Petitioner's application for a variance in an Order entered 21 January 2010. In its Order the trial court concluded: that because the sign was expressly prohibited by section 153.144(A) of the Matthews Zoning Code, the Board had no authority to issue the requested variance; that Petitioners acquired no vested rights in the sign because the permit was illegal from its inception; that because the permit was revoked approximately one week after the sign was erected, the Town of Matthews was not barred by estoppel or laches from revoking the permit; that the Board had sufficient evidence on which to base its decision and did so with sufficient findings of fact; and that the Board had no duty to make findings of fact. Petitioners timely entered notice of appeal from this Order.

## II. Jurisdiction and Standard of Review

Jurisdiction in this Court is proper pursuant to N.C. Gen. Stat. § 7A-27(b) (2009) (stating a right of appeal lies with this Court from the final judgment of a superior court "entered upon review of a decision of an administrative agency"). "[T]his Court examines the trial court's order for error[s] of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review." *Turik v. Town of Surf City*, 182 N.C. App. 427, 429, 642 S.E.2d 251, 253 (2007) (second alteration in original) (internal quotation marks omitted) (quoting *Tucker v. Mecklenburg Cnty. Zoning Bd. of Adjustment*, 148 N.C. App. 52, 55, 557 S.E.2d 631, 634 (2001)). If a petitioner appeals an administrative decision "on the basis of an error of law, the trial court applies *de novo* review; if the petitioner alleges the decision was arbitrary and capricious, or challenges the sufficiency of the evidence, the trial court applies the whole record test." *Blue Ridge Co. v. Town of Pineville*, 188 N.C. App. 466, 469, 655 S.E.2d 843, 845-46, *disc. review denied*, 362 N.C. 679, 669 S.E.2d 742 (2008). "[A]n appellate court's obligation to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court." *Capital Outdoor, Inc. v. Guilford Cnty. Bd. of Adjustment*, 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J., dissenting) (citation omitted), *rev'd for reasons stated in the dissent*, 355 N.C. 269, 559 S.E.2d 547 (2002).

## III. Analysis

[1] Petitioners first allege the trial court erred by applying the wrong standard when reviewing the decision of the Board. Specifically, Petitioners contend the trial court applied the "whole record" test rather than *de novo* review. Petitioners, however, abandoned this issue by failing to provide any reason or argument in support of their assertion. *See* N.C. R. App. P. 28(b)(6) (2011) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.") Moreover, as stated above, we may properly resolve this dispute by addressing the dispositive issues before the Board and the trial court without determining the standard of review utilized below. *See Capital Outdoor, Inc.*, 146 N.C. App. at 392, 552 S.E.2d at 268. The dispositive issues presented in this dispute are whether the trial court erred in its interpretation of the sign ordinance and in its conclusion that the Board made sufficient findings of fact to support its denial of Petitioners' request.

### A. The Board's Authority to Grant the Variance

[2] Plaintiff argues that the trial court erred, as a matter of law, in finding that the Board of Adjustment had no authority to grant Petitioner the requested variance. We agree.

The trial court's Order affirming the Board's decision to deny Petitioners' application for a variance from the sign ordinance provides the following pertinent finding:

> (a) The sign which is the subject of the variance application is expressly prohibited by Section 153.144(A) of the Matthews Zoning Code, in that the Record shows it to be an individual business sign within multi-tenant property. Therefore, the Board has no authority to grant a variance for the sign. "The requested variance would be directly contrary to the Zoning Ordinance and, therefore, the Board has no authority to grant [p]etitioner[']s request." *Donnelly v. The Board of Adjustment of the Village of Pinehurst*, 99 N.C. App. 702, 394 S.E.2d 246 (1990).

As the trial court's interpretation of the zoning ordinance presents a question of law, it is subject to *de novo* review. *Hayes v. Fowler*, 123 N.C. App. 400, 404, 473 S.E.2d 442, 444 (1996). We conclude the trial court erred in its reliance on *Donnelly*; our reading of that decision does not support the trial court's conclusion.

At issue in *Donnelly* was the denial of the petitioner's application for a variance that would permit him to maintain a privacy fence

across the back of his commercial property in order to block the view of an adjacent highway. 99 N.C. App. 702, 704, 394 S.E.2d 246, 248. A city ordinance prohibited fences above a certain height, a height the petitioner's fence exceeded. *Id.* Only after erecting the fence did the petitioner seek a variance, which was denied by the inspector, by the Board of Adjustment, and by the superior court. *Id.*

On appeal, this Court affirmed the trial court's order, but did so after an analysis of the statutory factors required for the issuance of a variance. *Id.* at 708, 394 S.E.2d at 250. The *Donnelly* Court noted that in limited circumstances a board of adjustment may grant a variance to an ordinance as provided by section 160A-388 of our General Statutes, which states, in part:

> When practical difficulties or unnecessary hardships would result from carrying out the strict letter of a zoning ordinance, the board of adjustment shall have the power, in passing on appeals, to vary or modify any of the regulations or provisions of the ordinance . . . *so that the spirit of the ordinance shall be observed,* public safety and welfare secured, and substantial justice done.

*Id.* (emphasis added) (quoting N.C. Gen. Stat. § 160A-388(d)).

The *Donnelly* Court emphasized that while a board of adjustment has the power to grant a variance, its power is limited such that the variance may not violate the spirit of the ordinance; "the board is prohibited from authorizing a structure which conflicts with the general purpose of the ordinance." *Donnelly*, 99 N.C. App. 702, 708, 394 S.E.2d 246, 250. When the statute was "[r]ead as a whole," the Court interpreted the spirit of the ordinance as being to preserve the appearance of the town, specifically excluding tall privacy fences. *Id.* Thus, the *Donnelly* Court concluded, the requested variance would directly contradict the ordinance. *Id.* As such, the board of adjustment had no authority to grant the variance. *Id.*

In the present case, the section of the Matthews Zoning Code regulating signs begins with a statement of its purpose:

The purpose of this subchapter is intended to:

(1) Establish standards for the erection, alteration and maintenance of signs that are appropriate to various zoning districts;

(2) *Allow for adequate and effective signs for communicating identification* and other messages while preventing signs from dominating the visual appearance of the area in which they are located;

(3) Protect and enhance the view of properties from public rights-of-way;

(4) *Avoid confusing or misleading a driver* or obstructing necessary vision for traffic safety;

(5) Insure that permitted signs do not become a hazard or nuisance;

(6) *Advance the economic stability*, preservation and enhancement of property values; and

(7) Ensure and advance the positive visual impact and image of the town. *These regulations are designed to provide flexibility for individual needs of business identification* and for general communication opportunities.

Matthews Zoning Code § 153.140(A) (emphasis added) (R. at 44.).

Clearly, the statute is intended to protect the general appearance of commercial properties and prevent hazards and nuisances. When, "[r]ead as a whole", as we are instructed to do by *Donnelly*, it is apparent the ordinance was also intended to provide means for adequate and effective signage, prevent driver confusion, and allow for flexibility to meet individual needs for business identification—the very problems of which Petitioners complain. *Id.* Given this statement of purpose, we cannot agree with the trial court that Petitioners' sign is, as a matter of law, contrary to the zoning ordinance.

Respondents place great emphasis on section 153.144(A) of the Matthews Zoning Code, which prohibits more than one sign for multi-tenant properties. This does not, however, end the proper inquiry; to conclude otherwise would negate the purpose of a variance. The Board's power to deviate from this mandate was expressly provided by our legislature upon the inclusion of section 160A-388 in our General Statues. N.C. Gen. Stat. § 160A-388 (stating a board of adjustment "shall have the power to vary or modify any of the regulations or provisions" of an ordinance). Additionally, the Town of Matthews contemplated deviations from its zoning requirements by its inclusion of this delegated power in section 153.287(C)(1) of the Zoning Code: "The Board of Adjustment will hear and decide appeals on variances from the requirements of the chapter which relate to the establishment or extension of structures or uses of land." Indeed, as our Supreme Court has stated, a board of adjustment's "principal function [is] to issue variance permits so as to prevent injustice by a strict application of the ordinance." *Application of REA Const. Co.*, 272 N.C. 715, 718, 158 S.E.2d 887, 890 (1968). To summarily conclude that

Petitioners' requested variance is directly contrary to the zoning ordinance suggests that no variances could ever be permitted, and leads this Court to conclude the proper analysis was not made by the trial court.

Respondents also emphasize the statutory mandate that "[n]o change in permitted uses may be authorized by variance." N.C. Gen. Stat. § 160A-388(d). Likewise, Respondents cite to section 153.287 of the Matthews Zoning Code, which states, "The Board may not grant a variance which would allow the establishment of a use which is not otherwise permitted in the district." Matthews Zoning Code § 153.287(C)(1). We conclude Respondents' argument misinterprets the statute's prohibition of a "use."

An "area variance" is defined as "[a] variance permitting deviation from zoning requirements about construction and placement, but not from requirements about use." *Black's Law Dictionary* 1692-93 (9th ed. 2009). Furthermore, "[a]n 'area' variance is one which does not involve a use prohibited by the zoning ordinance, and generally speaking, it involves no change in the essential character of the zoned district, nor does it seek to change the essential use of the land." 83 Am. Jur. 2d, *Zoning and Planning* § 807 (footnotes omitted).

On the other hand, a "use variance" is "a variance permitting deviation from zoning requirements about use." *Black's Law Dictionary* 1693 (9th ed. 2009). "A 'use variance' generally permits a land use other than the uses permitted in the particular zoning ordinance; it essentially is a license to use property in a way not permitted under an ordinance." 83 Am. Jur. 2d, *Zoning and Planning* § 756 (footnotes omitted); *see Lee v. Bd. of Adjustment*, 226 N.C. 107, 112-13, 37 S.E.2d 128, 133 (1946) (reversing a board of adjustment's award of a permit for the construction of a business in a district zoned for residential use, stating the board effectively "rezoned" the lot and "amended the ordinance," which it had no authority to do).

Despite Respondents' suggestion otherwise, we conclude the variance Petitioners seek is not a use variance, seeking permission for a nonconforming use, but is an area variance, by which they seek to deviate from the ordinance for construction and placement of their sign.

### B. The Board's Findings of Fact

[3] Petitioners also argue the trial court erred in concluding the Board made sufficient findings of fact to support its denial of Petitioners' application for a variance. We agree.

In its 21 January 2010 Order, the trial court summarily concluded the Board made sufficient findings to support its decision. Then, citing to *Donnelly*, the trial court reasoned that because the requested variance was directly contrary to the Ordinance, "the board of adjustment has no duty to make findings and conclusions on the merits of the request." *Donnelly*, 99 N.C. App. at 708, 394 S.E.2d at 250. As we have determined the trial court erred in concluding the variance was directly contrary to the Ordinance, it also erred in concluding the Board had no duty to make sufficient findings. Consequently, we review the Board's decision *de novo*. *Blue Ridge Co.*, 188 N.C. App. at 469, 655 S.E.2d at 845-46.

"Findings of fact are an important safeguard against arbitrary and capricious action by the Board of Adjustment because they establish a sufficient record upon which this Court can review the Board's decision." *Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998). In making its findings of fact, the Board is required "to state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision." *Deffet Rentals, Inc. v. City of Burlington*, 27 N.C. App. 361, 365, 219 S.E.2d 223, 226-27 (1975). Our review of the Board's findings of fact leads us to conclude they are insufficient on several grounds.

The only record of the Board's findings of fact is the minutes to the Board's 10 July 2008 meeting. The minutes, introduced with the notation "Vice Chairman Lee discussed the findings of fact," provide no indication these minutes were intended to be the sole record of the findings. Significantly, the Board's discussion of the findings occurs *after* the Board members voted to deny Petitioners' application for a variance. From these minutes, we discern eight findings of fact:

[1.] If the property owner complied with the ordinance, he can secure a reasonable return from that property.

[2.] The property sold because of the merits of the location.

[3.] Signage is an issue for most retail in most Matthews locations. This is not a unique hardship.

[4.] Also, this is not a result of unique circumstances or lay of the land. It was a known condition upon purchase.

[5.] A variance would not be not in harmony or spirit of intent of the ordinance.

[6.] It would not secure the health or welfare of the public. The previously mentioned 90/10 split of elective vs. emergency situations at this facility did not, in his opinion, sway his mind on public safety.

[7.] Any hardship is the result of the applicant's own actions: He said it was a difficult decision, but they purchased the land knowing the conditions.

[8.] Dr. Ferrari operated his practice for 9-10 months without the monument sign. That is an indication that he can enjoy a reasonable return on his property without having the sign in place.

The first, fourth, and fifth findings, presented with no reasoning, are conclusory statements and thus insufficient to support the Board's decision. *E.g., Shoney's of Enka, Inc. v. Bd. of Adjustment,* 119 N.C. App. 420, 421-22, 458 S.E.2d 510, 511 (1995) ("[W]e do not believe the Board may rely on findings of fact which are merely conclusory in form.").

The second, third, seventh, and eighth findings are not supported by any evidence in the record, are mere conjecture, and cannot support the Board's decision. *See MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs,* 169 N.C. App. 809, 815, 610 S.E.2d 794, 798 (stating that speculative assertions and expressions of opinion cannot support a board of adjustment's findings), *disc. review denied,* 359 N.C. 634, 616 S.E.2d 539 (2005).

The sixth finding of fact (the variance "would not secure the health and welfare of the public") is supported solely by the opinion of Vice Chairman Lee and provides no reasoning for how the Board came to this conclusion. As such it is not sufficient to support the Board's finding. *Id.* (stating that expressions of opinion cannot support a board of adjustment's findings).

We conclude the Board's findings of fact lack the specificity necessary for this Court " 'to determine whether the Board ha[s] acted arbitrarily or ha[s] committed errors of law.' " *Shoney's,* 119 N.C. App. at 423, 458 S.E.2d at 512 (alterations in original) (quoting *Deffet Rentals,* 27 N.C. App. at 365, 219 S.E.2d at 227).

## C. Vested Rights, Estoppel, and Laches

[4] Finally, Petitioners argue the trial court erred in concluding they did not acquire vested rights in the permit and that the Town of

Matthews was not barred by estoppel or laches from revoking the permit. We disagree.

On 9 November 2007, the Board notified Dr. Ferrari that his appeal of the revocation of the sign permit had been denied. The written notification informed Dr. Ferrari that he had the right to appeal the Board's decision to superior court, or draft a text amendment to the ordinance. Petitioners did not appeal the Board's decision. Consequently, the Board's determination that the permit was issued in error and properly revoked is the law of the case and the parties are bound by the decision. *Martin Marietta Corp. v. Forsyth Cnty. Zoning Bd. of Adjustment*, 65 N.C. App. 316, 317, 309 S.E.2d 523, 524 (1983).

Provided the permit was issued in error, Petitioners cannot establish vested rights in reliance on the permit, and this argument is dismissed. *See Mecklenburg Cnty. v. Westbery*, 32 N.C. App. 630, 635, 233 S.E.2d 658, 661 (1977) ("[T]he permit must have been lawfully issued in order for the holder of the permit to acquire a vested right in the use."); *Clark Stone Co. v. N.C. Dept. of Env't & Natural Res., Div. of Land Res.*, 164 N.C. App. 24, 40, 594 S.E.2d 832, 842, *appeal dismissed, disc. review denied*, 358 N.C. 731, 603 S.E.2d 878 (2004).

Similarly, because Petitioners did not appeal the Board's 9 November 2007 decision denying his appeal of MCLUESA's revocation of the sign permit, Petitioners are bound by the decision and cannot now assert the town was barred by estoppel or laches from revoking the permit. These arguments are without merit.

### IV. Conclusion

In summary, we conclude the trial court erred in finding the Board had no authority to grant a variance for Petitioners' sign. We also conclude the trial court erred in finding the Board made sufficient findings of fact to support its decision. Therefore, the Order of the superior court affirming the Board's decision is reversed, in part, and the case is remanded, in part, to the superior court with instructions to further remand to the Town of Matthews Board of Adjustment for further proceedings consistent with this opinion.

Reversed, in part, and remanded, in part.

Judges CALABRIA and STROUD concur.