The Town of Orrville ("the Town") filed a complaint on May 10, 1999, against S H Mobile Homes, Inc., and Lula Powell (hereinafter collectively referred to as "the defendants") seeking to enforce the Town's zoning ordinance prohibiting the placement of mobile homes on property within the municipal limits of the Town that is not specifically zoned for mobile-home use. On or about June 1, 1999, Powell requested a variance from the Town's zoning ordinance after the Town filed its complaint to enjoin the defendants from placing a mobile home on property within the Town's municipal limits that was not zoned for mobile-home use; on June 19, 1999, the Town's Board of Adjustments ("the Board") voted unanimously to deny the variance. On July 7, 1999, the defendants answered the Town's complaint and counterclaimed, alleging, among other things, that the Town engaged in an intentional discriminatory practice by selectively enforcing the zoning ordinance. The defendants subsequently amended the counterclaim to appeal the decision of the Board pursuant to § 11-52-81, Ala. Code 1975.
On October 6, 1999, the parties filed a joint stipulation in which they agreed, in pertinent part, that all claims asserted by the defendants against the Town were *Page 858 
dismissed except the defendants' statutory appeal of the denial of the variance. The parties further stipulated that the issues before the trial court were whether Powell violated the Town's zoning ordinance and whether the Board's denial of Powell's application for a variance was proper. The joint stipulation also listed as the defenses of the defendants the selective enforcement and the unconstitutional application of the Town's zoning ordinance.
The trial court held a hearing on September 25, 2001, and received ore tenus evidence.[1] On December 2, 2002, the trial court entered a final judgment in favor of the defendants, in which the trial court denied the Town's request to enjoin the defendants from placing a mobile home on Powell's property. In its judgment, the trial court determined that the Town had selectively enforced its zoning ordinance, and, therefore, had unconstitutionally applied the zoning ordinance. The Town filed a postjudgment motion that was subsequently denied by the trial court. The Town appealed to the supreme court, which transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Generally, where the trial court receives ore tenus evidence, the trial court's judgment based on that evidence is entitled to a presumption of correctness and will not be reversed on appeal absent a showing that it is plainly and palpably wrong. Alverson v. Trans-Cycle Indus., Inc.,726 So.2d 670 (Ala.Civ.App. 1998). However, that presumption of correctness applies to the trial court's findings of fact, not to its conclusions of law. City of Russelville Bd. of Adjustment v. Vernon,842 So.2d 627 (Ala. 2002). Further, the presumption favoring the judgment of the trial court has no application when the trial court is shown to have improperly applied the law to the facts. Ex parte Board ofAdjustments of Mobile, 636 So.2d 415 (Ala. 1994).
On appeal, the Town contends that the trial court erred by misapplying the law to the facts in the instant case. More specifically, the Town avers that the trial court exceeded its authority by granting a variance to the defendants even though the defendants failed to show that the enforcement of the variance would result in an unnecessary hardship.
Alabama law is clear and our courts have repeatedly recognized that variances should be granted sparingly and only under unusual and exceptional circumstances where the literal enforcement of the ordinance would result in unnecessary hardship. Ex parte Chapman, 485 So.2d 1161
(Ala. 1986); see also Board of Zoning Adjustment of Fultondale v.Summers, 814 So.2d 851 (Ala. 2001); Ex parte Board of Zoning Adjustmentof Mobile, 636 So.2d 415 (Ala. 1994); Board of Zoning Adjustment ofMobile v. Dauphin Upham Joint Venture, 688 So.2d 823 (Ala.Civ.App. 1996); Board of Adjustment of Gadsden v. VFW Post 8600, 511 So.2d 216
(Ala.Civ.App. 1987). "An `unnecessary hardship' sufficient to support a variance exists where a zoning ordinance, when applied to the property in the setting of its environment, is `so unreasonable as to constitute an arbitrary and capricious interference with the basic right to private property.'" Ex parte Chapman, 485 So.2d at 1162 (quoting McQuillin,Municipal *Page 859 Corporations § 25.167 (3d. ed. 1983)). The determination of what constitutes an "unnecessary hardship" must be determined from the facts of the particular case. City of Mobile v. Sorrell, 271 Ala. 468,124 So.2d 463 (1960).
The record reveals that, in 1974, the Town adopted a zoning ordinance; that ordinance limited the placement of mobile homes within the municipal limits to mobile-home parks, stating:
 "Trailers, buses, mobile homes, or any other structure so built to be, or give the reasonable appearance to be, mobile in the character of its construction will not be permitted in any district for any use other than for the purposes of transportation and transportation enterprises except that mobile homes may be located within mobile home parks and subdivisions where same are permitted under this ordinance."
The zoning ordinance defined a mobile home as
 "[a]ny structure intended for, or capable of, human habitation, mounted upon wheels and capable of being driven, propelled, or towed from place to place without change in structure or design, by whatsoever name or title it is colloquially or commercially known. Removal of wheels and placing the structure on the ground, piers, or other foundation shall not remove such a vehicle from this definition; provided that this definition shall not include transport trucks or vans for sleeping of a driver or drivers. To be termed a mobile home, such structure shall not have less than 250 square feet of floor area."
In early 1999, Powell purchased property within the Town's municipal limits; the property was located behind a house owned by Powell's brother. The property was zoned as a combination of two districts — R-1 for residential district, and A-O for agricultural-open district. The zoning ordinance permits the following uses in an R-1 residential district:
 "Single family dwellings; accessory structures (carports and utility rooms and structures used for residential storage); gardens; playgrounds; parks; public buildings, including public schools and libraries."
The following uses are permitted by the zoning ordinance for an agricultural-open district:
 "Single family dwellings, accessory structures, playgrounds, parks, tree farms, crop farming, grazing of livestock, temporary or seasonal roadside product stands, commercial greenhouses, and nurseries and farms, provided that the Building Inspector determines that such use of land would not have an adverse effect upon land use and property values in any zoning district within the Town."
At or about the time Powell purchased the property, Powell informed Gene McHugh, the Town's mayor and building inspector, of her intent to purchase a mobile home and to place it on the property. McHugh told Powell that the property she had purchased was not zoned for mobile-home use; Powell testified that she understood the limitation on the property provided for in the zoning ordinance.
Shortly thereafter, Powell purchased a double-wide mobile home, and, in April 1999, she attempted to move the mobile home onto her property. McHugh testified that he went to the property and informed the defendants that they could not place the mobile home on the property; at that time, the defendants did not set up the mobile home. Approximately one week later, the defendants placed the mobile home on the property. The Town sued the defendants seeking to enforce the zoning ordinance. Powell subsequently applied to the Board for a variance. *Page 860 
In support of her application for a variance, Powell stated that her mother was dying and that she needed a larger house in which she could care for her mother; according to Powell, her brother's house was inadequate. At the time of the hearing before the Board, Powell's mother had died and Powell asserted that her brother and children now needed a home. According to Powell and her brother, the neighbors did not object to her placing the mobile home on the property and the mobile home would not be visible from the street.
Following a hearing, the Board unanimously voted to deny Powell's request for a variance. Frank Williamson, the chairman of the Board, testified that Powell had failed to present evidence that demonstrated an unnecessary hardship if the zoning ordinance was applied to the property. According to McHugh, 14 people had applied for a similar variance from the zoning ordinance, and all 14 requests had been denied. Since the enactment of the zoning ordinance, the Town has granted a variance only to June Moore, a member of the Town Planning Commission. According to McHugh, Moore had a modular home and not a mobile home.
McHugh testified that, contrary to the defendants' assertion, the zoning ordinance had not been selectively enforced. Louvenia Lumpkin placed a mobile home on the Town boundary line. According to McHugh, Lumpkin was allowed to live in the mobile home until she built her house; Lumpkin lived in the mobile home for approximately 8 years. Steve Erly had a mobile home on his property that, according to Inez Anderson, Erly's sister, was placed on the property in approximately 1976. McHugh testified that Erly's mobile home was on the property prior to the enactment of the zoning ordinance, and, therefore, it was precluded from the application of the zoning ordinance.
Relying on evidence presented at trial that indicated that others were allowed to place mobile homes on property within the Town's municipal limits that was not zoned for mobile-home use, the trial court entered a judgment in favor of the defendants in which it determined that the Town had engaged in unlawful selectivity by granting only June Moore a variance and by excluding mobile homes merely because they were incompatible with housing in the affected area. Alabama courts have recognized that "`a municipality may establish a comprehensive land-use plan and effectuate that plan through a scheme of comprehensive zoning regulations.'" Ex parte City of Orange Beach Bd. of Adjustment,833 So.2d 51, 53 (Ala. 2001), citing Budget Inn of Daphne, Inc. v. Cityof Daphne, 789 So.2d 154, 158 (Ala. 2000). Therefore, when reviewing a zoning ordinance, this court is limited to determining whether the ordinance in question is arbitrary or capricious. Id.
In the instant case, the trial court based its judgment on what it perceived to be the selective application of the Town's zoning ordinance. Generally, a trial court's review of a decision of a board of adjustment is limited to only those issues that could be properly presented to the board. See Bedgood v. United Methodist Children's Home, 598 So.2d 988
(Ala.Civ.App. 1992) (circuit court's review limited to issues presented to the board of adjustment). However, it does not appear from the record before us that Powell presented the issue of selective application to the Board or that the Board addressed the issue at the variance hearing. Moreover, the parties stipulated before trial that the issues before the trial court for review were limited to whether a violation of a zoning ordinance had occurred and whether the denial of the requested variance was proper. *Page 861 
Therefore, the dispositive issue on appeal is whether the enforcement of the zoning ordinance and the subsequent denial of a variance resulted in an unnecessary hardship to the defendants. "'[T]he unnecessary hardship which will suffice for the granting of a variance must relate to the land rather than to the owner [herself]. Mere personal hardship does not constitute sufficient ground for the granting of a variance.'" Exparte Chapman, 485 So.2d at 1164 (quoting 82 Am.Jur.2d Zoning andPlanning § 275 (1976)). Further, a "`self-inflicted or self-created hardship may not be the basis for a variance or for a claim thereof.'" Exparte Chapman, 485 So.2d 1163 (quoting Thompson, Weinman Co. v.Board of Adjustments, 275 Ala. 278, 281, 154 So.2d 36, 39 (1963)).
It is undisputed that Powell knew of the zoning restriction before she purchased the mobile home. Nevertheless, Powell purchased the mobile home without first seeking and securing a variance. In her brief on appeal, Powell asserts that it would have been futile to apply for a variance in light of McHugh's statement that the zoning ordinance prohibited the placement of the mobile home on the property. Regardless of the alleged futility in applying for a variance, Powell was aware of the zoning restriction but proceeded to place a mobile home on the property. Clearly, Powell created the hardship that she alleged existed, and, therefore, she may not be permitted to take advantage of it. See Ex parteChapman, supra; see also City of Russellville Zoning Board of Adjustmentv. Vernon, 842 So.2d 627 (Ala. 2002) (holding trial court erred by granting variance from zoning restriction where appellee created hardship).
Moreover, the alleged hardship upon which Powell based her variance request did not relate to the property but, instead, related to her personal need for a larger house in order to care for her family. See Exparte Chapman, supra (hardship must relate to land and not to person). We find this to be an insufficient basis on which to grant a variance. We must conclude that, given the defendants' failure to demonstrate how the enforcement of the zoning ordinance would result in an unnecessary hardship, the trial court erred in granting the variance. The judgment of the trial court is, therefore, reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
CRAWLEY and MURDOCK, JJ., concur in the result.
[1] This is the second time the trial court tried the instant case. The case was initially tried, and a judgment was rendered, on February 25, 2000. The Town appealed that judgment to the supreme court. Following a failed attempt to procure the first trial transcript, the parties filed a joint motion with the supreme court seeking to vacate the February 25, 2000, judgment and to remand the case for a new trial; on February 9, 2001, that motion was granted.