CHAPEL HILL TITLE & ABSTRACT CO. v. TOWN OF CHAPEL HILL

[190 N.C. App. 487 (2008)]

Affirmed.

Judges WYNN and CALABRIA concur.

━━━━━━━━━━━

CHAPEL HILL TITLE AND ABSTRACT CO., INC., AND JONATHAN STARR AND WIFE, LINDSAY STARR, Petitioners v. TOWN OF CHAPEL HILL AND THE TOWN OF CHAPEL HILL BOARD OF ADJUSTMENT, Respondents v. ROBERT B. FERRIER, HANSON R. MALPASS AND WIFE BETSY J. MALPASS, Respondents-Intervenors

No. COA07-1292

(Filed 20 May 2008)

## Zoning— request for variance—Resource Conservation District—effect of restrictive covenants

The trial court erred by concluding that petitioners were entitled to a variance permitting construction of a house within the portion of the property designated as a Resource Conservation District (RCD), and the case is remanded with instructions to reinstate the Board of Adjustment's (BOA) resolution of 30 January 2007 denying the request, because: (1) the trial court considered the effect of the restrictive covenants when determining whether the BOA should have granted petitioners a variance from the requirements of the RCD ordinance, and the plain language of the RCD ordinance and the greater weight of authority from other jurisdictions make clear the BOA was only able to consider the operation of the RCD ordinance when determining whether petitioners met the requirements necessary to secure a variance; (2) the RCD ordinance did not divest the property of any reasonable use, and the fact the Town had previously issued Chapel Hill Title a building permit in December 2002 demonstrated that it was possible to construct a residence on the property in compliance with the RCD ordinance without the need for a variance; (3) it would be adverse to the goals of the RCD ordinance and to the community benefits secured therefrom to allow the terms of a private contract to dictate the BOA's decision on whether to enforce the RCD ordinance; (4) restrictions contained in zoning ordinances and restrictive covenants operate entirely independent of one another; (5) decisions from several other states make clear that restrictive covenants are irrelevant to a BOA's determination of whether a variance is warranted; and (6) a court's review of a

constitutional challenge to a property regulation is limited to the operation of the regulation itself and does not turn on restrictions contained in a private contract.

Judge TYSON dissenting.

Appeal by Respondents and Respondents-Intervenors from order entered 25 July 2007 by Judge Kenneth C. Titus in Orange County Superior Court. Heard in the Court of Appeals 19 March 2008.

*The Brough Law Firm, by Michael B. Brough, for Petitioners.*

*Northen Blue, LLP, by David M. Rooks and Samantha H. Cabe, for Respondents.*

*Poyner & Spruill, LLP, by Robin Tatum Currin and Andrew J. Petesch, for Respondents-Intervenors.*

McGEE, Judge.

Chapel Hill Title and Abstract Company (Chapel Hill Title) owns a vacant lot (the property) located at 901 Coker Drive in Chapel Hill, North Carolina. The property is zoned as an R-1 residential district. The property is subject to a town ordinance that requires building setbacks of twenty-eight feet from the street property line, seventeen feet along the rear property line, and fourteen feet along the remaining property lines. *See* Chapel Hill, N.C., Land Use Management Ordinance (L.U.M.O.) Table 3.8-1 (2007). The property is also subject to an ordinance (the RCD ordinance) regulating development in a Resource Conservation District (RCD), which "applie[s] to the areas within and along watercourses within the town's planning jurisdiction." L.U.M.O. § 3.6.3. A portion of the property lies within the RCD. Additionally, the property is subject to private restrictive covenants that requires a fifty-foot street setback and an 0.60 acre minimum lot size.

Chapel Hill Title applied for a building permit from the Town of Chapel Hill (the Town) in December 2002 to construct a house on the portion of the property located outside the RCD. The proposed structure complied with all relevant town ordinances, and the Town granted the building permit. However, when construction began, neighboring property owners sued to enjoin the construction on the grounds that the total area of the property was smaller than the 0.60 acre minimum lot size, and that the proposed construction violated the fifty-foot setback restriction, as required by the restrictive

covenants. The trial court issued an order on 21 April 2003 enjoining Chapel Hill Title from continuing with the proposed construction in violation of the restrictive covenants.

Following the trial court's order, Chapel Hill Title purchased a small tract of land from a neighboring property owner in order to increase the size of the property to 0.60 acres. Chapel Hill Title then entered into a contract to sell the property to Jonathan and Lindsay Starr (the Starrs) (together with Chapel Hill Title, Petitioners). The Starrs' obligation to purchase the property, however, was contingent on the Town of Chapel Hill Board of Adjustment's (Board of Adjustment) grant of a variance permitting construction of a house within the portion of the property designated as an RCD.

Petitioners applied for a building permit and variance in June 2004. Pursuant to L.U.M.O. § 3.6.3(j)(2)(A), the Board of Adjustment was required to grant a variance to allow Petitioners to construct a house in the RCD if it found:

(1) That the provisions of [the RCD ordinance] leave an owner no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain; and

(2) That a failure to grant the variance would result in extreme hardship.

L.U.M.O. § 3.6.3(j)(7) further provided:

[A] showing that the portion of the [RCD] outside of a regulatory floodplain overlays more than seventy-five (75) per cent of the area of a zoning lot, shall establish a rebuttable presumption that the [RCD] leaves the owner no legally reasonable use of the zoning lot outside of the regulatory floodplain. Such presumption may be rebutted by substantial evidence before the [B]oard of [A]djustment.

The Board of Adjustment denied Petitioners' request for a variance on 1 September 2004. Petitioners appealed to the Orange County Superior Court, and the Superior Court affirmed the Board of Adjustment's decision on 21 April 2005. Petitioners then appealed to our Court. We issued an unpublished opinion on 18 July 2006 finding that the denial of the variance request was not supported by sufficient findings to permit judicial review. We therefore reversed the Superior Court's order and remanded the case to the Board of Adjustment for further findings. See *Chapel Hill Title & Abstract*

*Co. v. Town of Chapel Hill*, 178 N.C. App. 561, 631 S.E.2d 893 (2006) (unpublished).

The Board of Adjustment adopted a resolution on 30 January 2007 again denying Petitioners' request for a variance and setting out specific findings of fact on which its decision was based. In accordance with those findings, the Board of Adjustment made the following conclusions of law:

1. [Petitioners have] established a rebuttable presumption that the provisions of the [RCD] Ordinance leave the property owner with no legally reasonable use of the portion of the zoning lot outside the regulatory floodplain because the [RCD] zoning district overlays 78.5% of the lot, outside the regulatory floodplain.

2. This rebuttable presumption . . . has been rebutted by evidence that a Building Permit was issued by [the Town] in December 2002 for a single-family residence on [the property] that met the limitations of the [RCD] Ordinance without the need for a variance. Therefore, this evidence shows that there is sufficient area on this lot outside the [RCD] on which to build a residential structure in compliance with Town regulations. The Board [of Adjustment] recognizes the Court Order enforcing the pre-existing restrictive covenants halted construction of the house for which the Town issued the building permit in 2002, but concludes that the provisions of the [RCD] Ordinance are not responsible for the owner having no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain.

Petitioners filed a "Petition for Review in the Nature of Certiorari" in Orange County Superior Court on 1 March 2007. On 15 June 2007, Robert B. Ferrier, Hanson R. Malpass, and Betsy J. Malpass (Respondents-Intervenors), owners of property abutting the property in question, filed a motion to intervene in the action. The trial court granted Respondents-Intervenors' motion on 19 July 2007.

Following a hearing on the merits, the trial court issued an order on 25 July 2007 reversing the Board of Adjustment's decision and remanding the case to the Board of Adjustment with instructions to issue Petitioners' requested variance. With respect to the Board of Adjustment's second conclusion of law, the trial court found

that the restrictive covenants that apply to the property in question were adopted in 1959, and that these covenants impose a 50' setback requirement from the front (street) property line, which

setback is more restrictive than the setback line established by [the Town]'s ordinance (28'). This covenant remains enforceable, as demonstrated by the April 21, 2003 order of this Court enjoining the property owner from constructing a house in a location that violates this covenant. Prior to the adoption of the RCD provisions of the ordinance, the lot in question could have been developed consistent with the provisions of the ordinance then in effect as well as the restrictive covenants. However, when the RCD provisions (which prevent the construction of buildings within the RCD) were adopted in the 1980's, the RCD covered approximately 79% of the subject lot. As a result, following the adoption of the RCD ordinance, the lot is no longer developable. Because the ordinance establishes a rebuttable presumption that the property owner is left with no reasonable use of a lot if the RCD overlays more than 75% of the lot, and because the restrictive covenants were in place at the time the RCD ordinance was adopted, the Court concludes that the RCD in this case leaves the owner no legally reasonable use of the property. Accordingly, the Board [of Adjustment]'s second conclusion of law . . . is in error.

The Town, the Board of Adjustment (together, Respondents), and Respondents-Intervenors filed notices of appeal from the trial court's order.

## A.

Respondents-Intervenors argue that the trial court erred by concluding that the RCD ordinance left Petitioners with "no legally reasonable use" of the property. L.U.M.O. § 3.6.3(j)(2)(A)(1). Respondents-Intervenors contend that in deciding whether to grant a variance, the Board of Adjustment properly limited its inquiry to whether the provisions of the RCD ordinance alone left Petitioners with no reasonable use of the property. Therefore, according to Respondents-Intervenors, the trial court erred by asking whether it was the RCD ordinance provisions, *or the private restrictive covenants*, that left Petitioners with no reasonable use of the property.

Petitioners respond that it was proper for the trial court to consider the operation of both the RCD ordinance and the restrictive covenants when determining whether the Board of Adjustment should have granted a variance. Petitioners then ask this Court to adopt a "before-and-after" test to determine whether the RCD ordinance, or the restrictive covenants, were responsible for divesting the

property of any reasonable use. Petitioners note that the restrictive covenants applicable to the property were created in 1959. Between 1959 and the Town's adoption of the RCD ordinance in the 1980s, a residential structure could be built on the property without violating the setback restrictions in the restrictive covenants. However, after the Town enacted the RCD ordinance in the 1980s, it became impossible to erect a residential structure on the property that complied with both the RCD ordinance and the restrictive covenants. Petitioners reason that because the restrictive covenants were in place first, it was the RCD ordinance, and not the restrictive covenants, that left Petitioners with "no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain[.]" L.U.M.O. § 3.6.3(j)(2)(A)(1).

After careful consideration of the parties' arguments, we agree with Respondents-Intervenors and hold that the trial court erred by considering the effect of the restrictive covenants when determining whether the Board of Adjustment should have granted Petitioners a variance from the requirements of the RCD ordinance. The plain language of the RCD ordinance and the great weight of authority from other jurisdictions make clear that the Board of Adjustment was only able to consider the operation of the RCD ordinance when determining whether Petitioners met the requirements necessary to secure a variance.

## B.

We need look no further than the plain language and expressed intent of the RCD ordinance to determine that the Board of Adjustment was unable to consider the existence of the restrictive covenants when rendering its decision. In *Donnelly v. Board of Adjustment of the Village of Pinehurst*, 99 N.C. App. 702, 394 S.E.2d 246 (1990), our Court stated that "with regard to zoning ordinances, '[t]he best indicia of [legislative] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.' " *Id.* at 705, 394 S.E.2d at 248 (quoting *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980)). Further, "[w]hen interpreting zoning ordinances, words are given their ordinary meaning and significance." *Id.* at 707, 394 S.E.2d at 250.

The RCD ordinance clearly states that the Board of Adjustment may only grant a variance if it finds "[t]hat the provisions of *this article* leave an owner no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain[.]" L.U.M.O.

§ 3.6.3(j)(2)(A)(1) (emphasis added). If the Town intended for the Board of Adjustment to consider the joint operation of the RCD ordinance and any applicable restrictive covenants when determining whether a certain property had a reasonable use, it could have so specified in the RCD ordinance. However, the Town chose to limit the relevant inquiry to the operation of the RCD ordinance alone. Under such an inquiry, it is clear that the RCD ordinance did not divest the property of any reasonable use. The fact that the Town had previously issued Chapel Hill Title a building permit in December 2002 demonstrates that it was possible to construct a residence on the property in compliance with the RCD ordinance, without the need for a variance. This sufficiently rebuts the presumption established by the RCD ordinance that the RCD left no reasonable use of the property because "the portion of the [RCD] outside of [the] regulatory floodplain overlays more than seventy-five (75) per cent of the area of [the] zoning lot[.]" L.U.M.O. § 3.6.3(j)(7).

In addition to the plain language of the RCD ordinance, the spirit and purposes of the RCD ordinance also demonstrate that the Board of Adjustment's inquiry was properly limited to the effect of the RCD ordinance. The RCD ordinance explicitly established that the Town's purpose in creating the RCD was

> to preserve the water quality of the [T]own's actual or potential water supply sources, to minimize danger to lives and properties from flooding in and near the watercourses, to preserve the water-carrying capacity of the watercourses, and to protect them from erosion and sedimentation, to retain open spaces and greenways and to protect their environmentally-sensitive character, to preserve urban wildlife and plant life habitats from the intrusions of urbanization, to provide air and noise buffers to ameliorate the effects of development, and to preserve and maintain the aesthetic qualities and appearance of the town.

L.U.M.O. § 3.6.3(1). The RCD ordinance further provides that it should be "strictly construed in favor of the public interest and community benefit[.]" L.U.M.O. § 3.6.3(a). It surely would be adverse to the important goals of the RCD ordinance, and to the community benefits secured therefrom, to allow the terms of a private contract to dictate the Board of Adjustment's decision on whether to enforce the RCD ordinance. *See, e.g., In re Michener's Appeal*, 115 A.2d 367, 369 (Pa. 1955) (instructing that "[z]oning laws are enacted under the police power in the interests of public health, safety and welfare; they have no concern whatever with building or use restrictions contained

in instruments of title and which are created merely by private contracts"). We therefore hold that the trial court erred by considering the operation of restrictive covenants in reaching its conclusion that the RCD ordinance left Petitioners with "no legally reasonable use" of the property.

C.

Commentators and courts from other jurisdictions are in accord with this holding. As one leading commentator notes, restrictions contained in zoning ordinances and restrictive covenants operate entirely independent of one another:

> [Z]oning is entirely divorced in concept, creation, enforcement, and administration from restrictions arising out of agreements between private parties[.] . . . Zoning restrictions and restrictions imposed by private covenants are independent controls upon the use of land, the one imposed by the municipality for the public welfare, the other privately imposed for private benefit.

> Both types of land use restrictions are held by courts to legally operate independently of one another.

Arden H. Rathkopf & Daren A. Rathkopf, *Rathkopf's The Law of Zoning and Planning* § 82:2, at 82-3, -4 (5th ed. 2005).

The Supreme Judicial Court of Massachusetts applied this principle in *Brackett v. Board of Appeal of Building Department*, 39 N.E.2d 956 (Mass. 1942). In *Brackett*, a hotel purchased a lot in a "general residence" zoning district that permitted private residences, hotels, and certain other buildings. *Id.* at 957. The lot was also subject to a restrictive covenant that prevented any development other than a single-family residence. *Id.* at 958. The hotel wished to use the lot as a hotel parking lot and sought a variance from the city. As a basis for its variance request, the hotel argued that due to nearby commercial development, the property was no longer suitable for residential use. *Id.* at 958-59. The board of appeals agreed and granted the variance, but the appellate court reversed the board's decision, finding that no hardship existed merely by reason of the restrictive covenant:

> It would seem that the hardship in the case at bar, in so far as the premises in question are concerned, is that they are restricted in development to the erection of a single family dwelling house. . . . [I]t would seem that the board had in mind the disad-

vantage of the corporation arising from the restriction upon its lot, rather than any disadvantage attributable to the fact that the premises are zoned in a general residence district. In short, apart from the fact that the premises in question are restricted to a single family dwelling, there is no finding that there are any other conditions that render the premises unsuitable for residential and other uses permissible under the zoning law[.]

*Id.* at 959-60. North Carolina commentators have relied on *Brackett* for the proposition that a board of adjustment may only consider the effect of the zoning ordinance at issue when determining whether to grant a variance. *See* David W. Owens, *Land Use Law in North Carolina* at 132 (2006) (citing *Brackett* for the rule that "the hardship [must] result from the application of the ordinance itself. For example, a hardship caused by a restrictive covenant . . . does not qualify the owner for variance consideration."); Michael B. Brough & Philip P. Green, Jr., *The Zoning Board of Adjustment in North Carolina* at 20 (2d ed. 1984) (relying on *Brackett* to demonstrate that "[i]n deciding whether the facts show such hardship as would justify the issuance of a variance, the Board of Adjustment must limit itself to evidence of hardship resulting from the application of the ordinance to the property involved. Other hardship is irrelevant to this decision.").

In addition to Massachusetts, decisions from several other states make clear that restrictive covenants are irrelevant to a board of adjustment's determination of whether a variance is warranted.[1] *See, e.g., Whiting v. Seavey*, 188 A.2d 276, 280 (Me. 1963) (stating that "[t]he law is well established that restrictive covenants in a deed as to use of property are distinct and separate from the provisions of a zoning law and have no influence or part in the administration of a zoning law"); *Michener*, 115 A.2d at 369-70 (stating that "[c]ontracts between property owners . . . should not enter into the enforcement

---

1. Petitioners and the dissenting opinion correctly note that some courts have held that it is proper for zoning boards to consider restrictive covenants when making other types of zoning determinations. *See, e.g., Daro Realty v. Dist. of Columbia Zoning*, 581 A.2d 295, 305 (D.C. 1990); *Capitol Hill Restoration Soc. v. Zoning Com'n*, 380 A.2d 174, 184-85 (D.C. 1977), *overruled on other grounds, Citizens Ass'n of Georgetown v. Zon. Com'n*, 392 A.2d 1027, 1036 (D.C. 1978) (en banc). However, these cases merely stand for the proposition that a zoning authority may consider the existence of restrictive covenants when determining whether to *rezone* certain property. They do not address situations where, as here, a board of adjustment must consider whether to grant a variance from an existing zoning regulation. Petitioners have cited no authority suggesting that considerations relevant to rezoning decisions are equally relevant to decisions regarding whether to grant a variance.

of zoning regulations. . . . [I]t has been uniformly held that any consideration of building restrictions placed upon the property by private contract has no place in proceedings under the zoning laws for a building permit or a variance"); *cf. Suess v. Vogelgesang*, 281 N.E.2d 536, 544 (Ind. App. 1972) (holding that because zoning regulations and restrictive covenants operate independently of each other, a petitioner who is otherwise entitled to a variance should not be denied a variance "merely because utilization of the grant may be in violation of private restrictive covenants"); *Lorland Civic Association. v. DiMatteo*, 157 N.W.2d 1, 8 (Mich. App. 1968) (same). *See generally* Rathkopf § 82:3, at 82-13, -14 (discussing the irrelevance of restrictive covenants when a zoning board considers a variance request).

## D.

The dissenting opinion asserts that based on our holding in the present case, Petitioners might legitimately challenge the current application of the RCD ordinance on the grounds that it is unreasonable and confiscatory, and that it amounts to an unconstitutional taking without compensation. The dissent's concerns are unfounded. While the present case does not require us to pass upon the legality of the RCD ordinance, we note that the cases cited by the dissent suggest that, as with a board of adjustment's decision to grant a variance, a court's review of a constitutional challenge to a property regulation is limited to the operation of the regulation itself, and does not turn on restrictions contained in a private contract. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016, 120 L. Ed. 2d 798, 813 (1992) (stating that "the Fifth Amendment is violated when [the government's] land[-]use regulation . . . 'denies an owner economically viable use of his land' " (quoting *Agins v. Tiburon*, 447 U.S. 255, 260, 65 L. Ed. 2d 106, 112 (1980), *overruled on other grounds, Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 161 L. Ed. 2d 876 (2005)); *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 261-62, 302 S.E.2d 204, 208 (1983) (when determining whether a government regulation of private property is an invalid exercise of the police power, a court should ask whether the regulation's "interference with the owner's right to use his property as he deems appropriate" is reasonable). *See also Helms v. Charlotte*, 255 N.C. 647, 653, 122 S.E.2d 817, 822 (1961) (stating that "if the *application of a zoning ordinance* has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted, the ordinance is invalid" (emphasis added)).

In sum, allowing a board of adjustment to consider the operation of restrictive covenants when determining whether to grant a variance is supported by neither case law, nor commentators, and is contrary to the language and purposes of the RCD ordinance at issue in this case. We therefore reverse the trial court's order and remand the case with instructions to the trial court to reinstate the Board of Adjustment's resolution of 30 January 2007. Given our holding on this issue, we do not address Respondents' or Respondents-Intervenors' additional arguments.

Reversed and remanded.

Judge STEPHENS concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority's opinion: (1) holds the superior court erred when it considered the operation of restrictive covenants when it reached its conclusion that the Resource Conservation District ("RCD") left Chapel Hill Title and Abstract Co., Inc. ("Chapel Hill Title") and Jonathan and Lindsay Starr ("the Starrs") (collectively, "petitioners") with no legally reasonable use of their property and (2) reverses the superior court's order. I vote to affirm the superior court's order and respectfully dissent.

## I. Issues

The Town of Chapel Hill ("the Town") and the Town of Chapel Hill Board of Adjustment ("the Board") (collectively, "respondents") and Robert B. Ferrier, Hanson R. Malpass, and Betsy J. Malpass (collectively, "intervenors") argue the superior court erred when it concluded that: (1) the RCD left petitioners with no legally reasonable use and (2) the denial of the variance request would result in extreme hardship.

## II. Standard of Review

When a superior court reviews the decision of a town council or administrative body, it should:

(1) review the record for errors of law, (2) ensure that procedures specified by law in both statute and ordinance are followed, (3) ensure that appropriate due process rights of the petitioner are

protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

The task of this Court in reviewing a superior court order is (1) to determine whether the [superior] court exercised the proper scope of review, and (2) to review whether the [superior] court correctly applied this scope of review.

*Humane Soc'y of Moore Cty., Inc. v. Town of Southern Pines*, 161 N.C. App. 625, 628-29, 589 S.E.2d 162, 165 (2003) (internal quotations omitted).

### III. Proper Scope of Review

When the superior court reviewed the Board's decision, petitioners had only raised questions of law and the superior court "applied the *de novo* standard of review." There is no dispute that the superior court exercised the proper scope of review. *Id.* at 629, 589 S.E.2d at 165.

### IV. Application of Proper Scope of Review

The only question before this Court is whether the superior court correctly applied its *de novo* scope of review. *Id.* Respondents and intevenors argue the superior court erred when it found the Board's conclusions of law numbered 2 and 3 "legally erroneous." I disagree.

The Town's Land Use Management Ordinance states:

The Board . . . *shall grant* a variance, subject to the protections of this Article, if it finds:

(1.) That the provisions of this Article leave an owner no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain; and

(2.) That a failure to grant the variance would result in extreme hardship.

Chapel Hill, N.C., Land Use Mgmt. Ordinance § 3.6.3(j)(2)(A) (2004) (emphasis supplied). "Any owner of property applying to the Board . . . for a variance . . . shall have the burden of establishing that such variance should be granted by the Board." Chapel Hill, N.C.,

Land Use Mgmt. Ordinance § 3.6.3(j)(6). "[A] showing that the portion of the [RCD] outside of a regulatory floodplain overlays more than seventy-five percent (75%) of the area of a zoning lot, *shall establish a rebuttable presumption* that the [RCD] leaves the owner no legally reasonable use of the zoning lot outside of the regulatory floodplain." Chapel Hill, N.C., Land Use Mgmt. Ordinance § 3.6.3(j)(7) (emphasis supplied). The burden then shifts to the Town to rebut the presumption of no legally reasonable use. *Id.*

## A. Legally Reasonable Use

Respondents and intevenors argue, and the majority's opinion agrees, that the superior court erred when it concluded that the RCD left petitioners with no legally reasonable use. I disagree.

On remand from this Court, the Board entered conclusion of law numbered 2, which stated:

This rebuttable presumption that the provisions of the [RCD] leave no legally reasonable use of the portion of the [property] outside the regulatory floodplain has been rebutted by evidence that a Building Permit was issued by the Town . . . in December 2002 for a single-family residence on this property that met the limitations of the [RCD] without the need for a variance. Therefore, this evidence shows that there is sufficient area on this lot outside the [RCD] on which to build a residential structure in compliance with Town regulations. The Board . . . concludes that the provisions of the [RCD] are not responsible for the owner having no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain.

The superior court found the Board's conclusion of law numbered 2 to be "legally erroneous." The superior court stated:

With respect to the Board's second conclusion of law, the Court notes that the restrictive covenants that apply to the property in question were adopted in 1959, and that these covenants impose a 50' setback requirement from the front (street) property line, which setback is more restrictive than the setback line established by [the Town's] ordinance (28'). This covenant remains enforceable, as demonstrated by the April 21, 2003 order of this Court enjoining the property owner from constructing a house in a location that violates this covenant. Prior to the adoption of the RCD provisions of the ordinance, the lot in question could have been developed consistent with the provisions of the ordinance

then in effect as well as the restrictive covenants. However, when the RCD provisions . . . were adopted in the 1980's, the RCD covered approximately 79% of the subject lot. As a result, following the adoption of the RCD ordinance, the lot is no longer developable. Because the ordinance establishes a rebuttable presumption that the property owner is left with no reasonable use of a lot if the RCD overlays more than 75% of the lot, and because the restrictive covenants were in place at the time the RCD ordinance was adopted, the Court concludes that the RCD in this case leaves the owner no legally reasonable use of the property.

The property and the applicable covenants were created as part of a subdivision in 1959, more than twenty years prior to the enactment of the RCD. Because the fifty-foot street setback limitation contained in the restrictive covenants did not render the lot undevelopable prior to the enactment of the RCD more than twenty years later, the RCD, not the covenants, left Chapel Hill Title with "no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain . . . ." Chapel Hill, N.C., Land Use Mgmt. Ordinance § 3.6.3(j)(2)(A)(1).

The majority's holding that the Board need not consider preexisting restrictive covenants when determining whether a variance is warranted sets a dangerous precedent. It is undisputed that Chapel Hill Title cannot comply with both the restrictive covenants and the RCD ordinance. Without a variance, Chapel Hill Title is not only left with no legally reasonable or "economically beneficial or productive use[,]" but is left with no affirmative use other than for the property to remain in its natural state. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 120 L. Ed. 2d 798, 813 (1992). Chapel Hill Title will be forced to attack application of the ordinance to its property. *See id.* at 1015, 120 L. Ed. 2d at 812-13 (internal citations omitted) ("We have . . . described at least two discrete categories of regulatory action as compensable without case-specific inquiry into the public interest advanced in support of the restraint. The first encompasses regulations that compel the property owner to suffer a physical invasion of his property. . . . The second situation in which we have found categorical treatment appropriate is where regulation denies all economically beneficial or productive use of land."); *see also Responsible Citizens v. City of Asheville*, 308 N.C. 255, 264, 302 S.E.2d 204, 210 (1983) (internal quotations omitted) ("[A] zoning ordinance would be deemed unreasonable and confiscatory, as applied to a particular piece of property, if the owner of the affected property

was deprived of all practical use of the property and the property was rendered of no reasonable value.").

If before the enactment of the ordinance provision in question, a lot was developable, and after the adoption of the ordinance it is not, the adoption of the ordinance has created the hardship. Conversely, if before the adoption of a restrictive covenant the property could be developed consistent with then applicable zoning regulations, and after the adoption of a restrictive covenant the property is undevelopable, the restrictive covenant has created the hardship. Here, "the provisions of [the RCD] leave [Chapel Hill Title] no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain . . . ." Chapel Hill, N.C., Land Use Mgmt. Ordinance § 3.6.3(j)(2)(A)(1).

A board of adjustment must take into consideration *all* preexisting characteristics of a lot in question, including restrictions imposed by private covenants, when deciding whether a subsequently enacted zoning ordinance has deprived the property owner of any reasonable use of his land and imposed hardships subject to remedy by a variance. *See Capitol Hill Restoration Soc. v. Zoning Com'n*, 380 A.2d 174, 185 (D.C. 1977) ("The existence of lawful private restrictions on land use is an actuality properly to be considered in zoning decisions."), *rev'd on other grounds, Citizens Asso. of Georgetown v. Zon. Com'n Etc.*, 392 A.2d 1027 (D.C. 1978).

The superior court did not err when it found the Board's conclusion of law numbered 2 "legally erroneous[]" and substantial evidence in the whole record supports the superior court's conclusion that the RCD "leave[s] [Chapel Hill Title] no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain . . . ." Chapel Hill, N.C., Land Use Mgmt. Ordinance § 3.6.3(j)(2)(A)(1). Because I would hold the superior court did not err when it concluded the RCD left petitioners with no legally reasonable or "economically beneficial or productive use[,]" I address respondent's second issue on appeal. *Lucas*, 505 U.S. at 1015, 120 L. Ed. 2d at 813.

## B. Extreme Hardship

Respondents and intevenors argue the superior court erred when it concluded that the denial of the variance request would result in extreme hardship when petitioners: (1) acquired the property with knowledge of all governmental and private restrictions and (2) presented no evidence of hardship to the Board. I disagree.

### 1. Knowledge of Governmental and Private Restrictions

On remand from this Court, the Board entered conclusion of law numbered 3, which stated:

The failure to grant this variance would not result in extreme hardship because the hardship is self-created. This determination is based on evidence that Chapel Hill Title . . . purchased this property knowing that a variance would be necessary in order for the property to be used for a single-family residence. Therefore, the Board concludes that the hardship is self-created and is not one that arises out of application of the ordinance.

The superior court found the Board's conclusion of law numbered 3 to be "legally erroneous." The superior court stated:

With respect to the Board's third conclusion of law, the Court concludes that the fact that . . . Chapel Hill Title . . . acquired the property with knowledge that a variance would be needed to develop it does not mean that the denial of the variance would not result in extreme hardship or that the hardship was self created. *This Court agrees with the modern view . . . that a purchaser acquires all the rights of the predecessor owner of the property, including the right to obtain a variance.*

(Emphasis supplied).

Whether purchasing property with knowledge of zoning limitations constitutes a self-created hardship is a matter of first impression in this State. *Rathkopf's The Law of Zoning and Planning* details and explains the past and emerging law in this area:

As early as 1927, it was considered self-created hardship if one purchased property with knowledge of zoning limitations, or with knowledge of a hardship suffered by the land arising from interaction of the zoning ordinance and the particular characteristics of the land. The concern was that a purchaser would attempt to create evidence of hardship by paying an excessive purchase price for restricted property assuming that the hardship thereby established would constitute the basis for a variance needed to use the land profitably. For years, therefore, the general rule was that one who purchased property with actual or constructive knowledge of the restrictions of a zoning ordinance was barred from securing a variance.

While this rule may still be applicable in a few jurisdictions, it has been altogether abandoned, or modified into nonexistence, in

others. Two basic faults in the old rule have been recognized, and these faults are the reasons behind its demise. First, since hardship can neither be measured by the cost of the property to the owner nor by the difference between the value the land has as restricted and the value it would have if the variance were granted, there is no danger that a knowledgeable purchaser could create evidence of hardship by paying an excessive purchase price for property that is restricted. Second, the old rule failed to acknowledge that if the prior owner would have been entitled to a variance at the time the zoning ordinance restriction was enacted, the right is not lost to a purchaser simply because he bought with knowledge of the regulation. . . .

The "current trend" in the rule, that purchase with knowledge of restrictions either does not prohibit the granting of a variance, or is at most a nondeterminative factor to consider in the granting of a variance, has had proponents at least as early as 1957 when the Supreme Court of Rhode Island rejected the notion that purchase with knowledge of restrictions, in itself, constituted self-created hardship. The "traditional rule" has been relaxed to leave the decision of whether a purchaser with knowledge of restrictions should receive a variance up to the discretion of the board of [adjustment].

It should not be within the discretion of a board of [adjustment] to deny a variance solely because a purchaser bought with knowledge of zoning restrictions. *Instead, the board of [adjustment] should be confined to considering knowledge of restrictions along with all other factors of the particular case.* A purchaser denied a variance because of his knowledge of restrictions would be able to attack application of the ordinance to his property. *To deny a purchaser a variance by such an application of the self-created hardship rule is inconsistent with the purpose of the variance, to prevent attacks on the ordinance as a whole.*

3 Arden H. Rathkopf & Daren A. Rathkopf, *Rathkopf's The Law of Zoning and Planning* § 58:22 (Edward H. Zeigler, Jr., ed., 2006) (citations omitted) (emphasis supplied). The great majority of sister states, who have considered this issue, support this analysis. *Spence v. Board of Zoning Appeals*, 496 S.E.2d 61, 63-64 (Va. 1998) (rejected the argument that the purchase of property with knowledge that a variance was needed to build a house constituted a self-inflicted hardship that barred a lot owner's variance request); *Bd. of Adjustment of*

*Oklahoma City v. Shanbour*, 435 P.2d 569, 575 (Okla. 1967) (citation omitted) ("[I]t is our opinion that the better rule and the one followed in a number of jurisdictions, is that [a purchase of property with knowledge, actual or presumed, of zoning restrictions] does not prohibit the granting of a variance." ); *Twigg v. Town of Kennebunk*, 662 A.2d 914, 918 (Me. 1995) ("[A]ctual or constructive knowledge of the zoning ordinances prior to purchase of the property may be considered by the Board as a factor in evaluating self-created hardship, but it is not determinative of such hardship."); *Sydoriak v. Zoning Bd. of Appeals*, 879 A.2d 494, 502 (Conn. App. Ct. 2005) (internal citation and emphasis omitted) ("Where . . . the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, a subsequent purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance. This right is not lost merely because the subsequent purchaser takes with the knowledge that the current zoning regulations would prohibit the use. Rather, the nonconformity must be attributable to the purchaser or his predecessor in interest in order for the hardship to be considered self-created."). *See Baker v. Connell*, 488 A.2d 1303, 1308 (Del. 1985); *Town of Orrville v. S & H Mobile Homes, Inc.*, 872 So. 2d 856 (Ala. Civ. App. 2003); *Reinking v. Metropolitan Bd. of Zoning Appeals*, 671 N.E.2d 137 (Ind. Ct. App. 1996); *Stansbury v. Jones*, 812 A.2d 312 (Md. Ct. App. 2002); *Graham v. Itasca County Planning Comm'n*, 601 N.W.2d 461 (Minn. Ct. App. 1999); *Harrington v. Town of Warner*, 872 A.2d 990 (N.H. 2005); *Jock v. Zoning Bd. of Adjustment*, 878 A.2d 785 (N.J. 2005); *Solebury Twp. v. Solebury Twp. Zoning Hearing Bd.*, 914 A.2d 972 (Pa. Commw. Ct. 2007); *Lewis v. Pickering*, 349 A.2d 715 (Vt. 1975); *Hoberg v. City of Bellevue*, 884 P.2d 1339 (Wash. Ct. App. 1994); *Schalow v. Waupaca County*, 407 N.W.2d 316 (Wis. Ct. App. 1987).

The modern and majority view holds that the fact that a lot owner has some prior knowledge of the existing zoning regulations applicable to the land does not preclude the right to a variance; it is merely an element to be considered in determining the existence of hardship. In view of the facts before us, this analysis is particularly relevant at bar. The superior court correctly found the Board's conclusion of law numbered 3 "legally erroneous."

## 2. Evidence of Hardship

Respondents and intevenors argue for the first time on appeal that petitioners presented no evidence of hardship to the Board.

Respondents and intevenors cannot assert a new and different theory on appeal not previously asserted before the superior court or the Board. *See Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]."); *see also Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001) (citations omitted) ("This Court has long held that issues and theories of a case not raised below will not be considered on appeal . . . ."). This assignment of error should be dismissed.

## V. Conclusion

The superior court exercised "the proper scope of [*de novo*] review" and "correctly applied this scope of review." *Humane Soc'y of Moore Cty., Inc.*, 161 N.C. App. at 629, 589 S.E.2d at 165. The superior court's order should be affirmed. I respectfully dissent.