CHAPEL HILL TITLE AND ABSTRACT COMPANY, INC., AND JONATHAN STARR AND WIFE, LINDSAY STARR, PETITIONERS v. TOWN OF CHAPEL HILL AND THE TOWN OF CHAPEL HILL BOARD OF ADJUSTMENT, RESPONDENTS v. ROBERT B. FERRIER, HANSON R. MALPASS, AND WIFE, BETSY J. MALPASS, RESPONDENT-INTERVENORS

No. 275A08

(Filed 12 December 2008)

## Zoning— variance—conservation district plus restrictive covenants—no legally reasonable use

A board of adjustment erred by denying a request for a variance where a Resource Conservation District ordinance prohibited construction on 78.5% of the property and restrictive covenants prevented construction on the remainder. The language of the ordinance requires a variance if the owner is left with no legally reasonable use, and instructs the board of adjustment to consider the actual state in which the property is found when determining that question. A prior building permit that can never be used does not rebut the presumption of no legally reasonable use.

Justice BRADY concurring.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 190 N.C. App. ——, 660 S.E.2d

667 (2008), reversing and remanding an order entered on 25 July 2007 by Judge Kenneth C. Titus in Superior Court, Orange County. Heard in the Supreme Court 14 October 2008.

*The Brough Law Firm, by Michael B. Brough, for petitioner-appellants.*

*Northen Blue, LLP, by David M. Rooks and Samantha H. Cabe, for respondent-appellees.*

*Poyner & Spruill LLP, by Robin Tatum Currin and Andrew J. Petesch, for respondent-intervenor-appellees.*

HUDSON, Justice.

In 2004 petitioners Chapel Hill Title and Abstract Company and Jonathan and Lindsay Starr sought a variance from respondents Town of Chapel Hill and its Board of Adjustment to construct a home in Chapel Hill on a vacant lot zoned for residential use. Because 78.5% of the property in question falls within a "Resource Conservation District" (RCD), unless petitioners receive a variance, the lot is subject to an ordinance that generally prohibits construction in such RCD areas. Moreover, restrictive covenants that also apply to the lot likewise prevented petitioners from building on the portion of the lot not subject to the RCD ordinance. After a protracted legal battle among the parties, including a first appeal to and remand by the Court of Appeals, the Board of Adjustment denied the variance on 30 January 2007.

The Superior Court of Orange County granted petitioners' writ of certiorari to review the Board's decision and allowed respondent-intervenors, who own homes in the immediate vicinity of the subject property, to intervene in the action. On 25 July 2007, the trial court entered an order reversing the Board's decision and remanding the matter with instructions "to issue the requested variance." Respondents and respondent-intervenors appealed to the Court of Appeals, which reversed the trial court in a 20 May 2008 divided opinion and remanded with instructions to reinstate the Board's resolution denying the variance. *Chapel Hill Title & Abstract Co., Inc. v. Town of Chapel Hill*, 190 N.C. App. ——, ——, 660 S.E.2d 667, 673 (2008). Based on the dissent in the Court of Appeals, petitioners appealed to this Court.

Petitioners challenge two conclusions of law made in the Board's denial of their request for a variance and subsequently upheld by the

**CHAPEL HILL TITLE & ABSTRACT CO. v. TOWN OF CHAPEL HILL**

[362 N.C. 649 (2008)]

Court of Appeals: (1) Because petitioner Chapel Hill Title obtained a building permit in December 2002 to construct a residence on the lot in a location wholly outside the RCD, the operation of the RCD ordinance is not responsible for petitioners having no legally reasonable use of the property; and (2) because petitioners were aware of the RCD ordinance and other limitations when they purchased the property, any hardship is self-created and does not arise out of application of the ordinance. The Town of Chapel Hill conceded in oral arguments before this Court that if petitioners could not build at all without the variance, denial of the variance would result in "extreme hardship" to petitioners. As such, we need not consider the arguments offered as to the rule applicable to a self-created hardship. Instead, we address only the issue of whether petitioners are left with "no legally reasonable use" of their property.

At the outset, we look to the pertinent language of the RCD ordinance itself to determine when a variance must be granted:

3.6.3  Resource Conservation District

(j)  *Variances in the Resource Conservation District*

    (1) Application

        An owner of property who alleges that the provisions of the Resource Conservation District leave no legally reasonable use of the property may apply to the Board of Adjustment for a variance. . . .

    (2) Required Findings

        A. The review of the Board of Adjustment shall extend to the entire zoning lot that includes area within the Resource Conservation District. The Board of Adjustment shall grant a variance, subject to the protections of this Article, if it finds:

            (1.) That the provisions of this Article leave an owner no legally reasonable use of the portion of the zoning lot outside of the regulatory floodplain; and

            (2.) That a failure to grant the variance would result in extreme hardship.

        B. In making such findings, the Board of Adjustment shall consider the uses available to the owner of the

entire zoning lot that includes area within the Re- source Conservation District.

. . . .

(7)  Presumption

. . . [A] showing that the portion of the Resource Conservation District outside of a regulatory floodplain overlays more than seventy-five percent (75%) of the area of a zoning lot, shall establish a rebuttable pre- sumption that the Resource Conservation District leaves the owner no legally reasonable use of the zon- ing lot outside of the regulatory floodplain. Such pre- sumption may be rebutted by substantial evidence before the Board of Adjustment.

Chapel Hill, N.C., Land Use Management Ordinance art. 3.6.3 (2004) (titled "Resource Conservation District").

According to the Board and the Court of Appeals majority below, although petitioners were entitled to the rebuttable presumption of "no legally reasonable use" because 78.5% of the property in ques- tion falls within an RCD, that presumption was rebutted by the build- ing permit granted to petitioner Chapel Hill Title in 2002. Thus, "the provisions of *this Article*," namely, the operation of the RCD ordinance alone, did not leave petitioners with "no legally reason- able use" of the property. *Id.* (emphasis added). Nevertheless, due to restrictive covenants to which the property is also subject, peti- tioner Chapel Hill Title was enjoined in April 2003 from using that building permit to construct a residence outside the RCD area of the lot in question.

The central question we address is whether the Board should consider the operation of the RCD ordinance independently, or in conjunction with, the effect of the private restrictive covenants, when determining if petitioners are entitled to a variance. We find the plain language of the ordinance itself to provide the answer, to wit: "In making such findings [as to legally reasonable use and extreme hardship], the Board of Adjustment *shall consider the uses available* to the owner of the entire zoning lot that includes area within the Resource Conservation District." *Id.* (emphasis added). Thus, the variance language of the ordinance instructs the Board to consider the actual state in which the property is found—including both its physical and legal conditions—and how those conditions interact

with the RCD ordinance, when determining if a variance is necessary to leave an owner with a "legally reasonable use" of the property.

Here, petitioners are clearly prevented by restrictive covenants from constructing a home on the 21.5% of the property that falls outside of the RCD ordinance; as such, they have no reasonable "uses available" to them of that portion of the lot. Likewise, because more than seventy-five percent of the property is subject to the ordinance, petitioners have shown they are entitled to rely on the rebuttable presumption of "no legally reasonable use" of the property. This presumption is not rebutted by a building permit that was issued but can never be used.

We find that the Board of Adjustment failed to properly consider "the uses available" to petitioners of the entire lot when determining that the 2002 building permit issued to petitioner Chapel Hill Title rebutted the presumption that petitioners were left with "no legally reasonable use" under the operation of the RCD variance. We therefore conclude that the Board erred by denying petitioners' request for a variance. Accordingly, we reverse the Court of Appeals and remand to that court with instructions to remand to the trial court to reinstate its original order to remand to the Board of Adjustment with instructions to issue the requested variance to petitioners.

REVERSED AND REMANDED.

Justice BRADY concurring.

While I concur in the Court's opinion, I write separately to emphasize the importance of property rights and the duty the government has to compensate individuals when it chooses to take land for public use. I believe that respondents' denial of petitioners' request for a variance not only violates the provisions of the Chapel Hill Resource Conservation District Ordinance (RCD Ordinance) because of respondents' failure to consider the effect of the restrictive covenants on the subject property, but I also believe that the denial results in a de facto taking, which requires respondents to provide just compensation for petitioners' land. As Justice Harlan aptly stated over a century ago: "Due protection of the rights of property has been regarded as a vital principle of republican institutions." *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 235-36 (1897). This historic right can be traced to the very earliest of our laws, and the courts have an important responsibility to steadfastly protect against its erosion.

The legal protection of private property rights dates back to the Magna Carta, which declares: "No free-man shall be seized, or imprisoned, *or dispossessed*, . . . excepting by the legal judgment of his peers, or by the laws of the land." Boyd C. Barrington, *The Magna Charta and Other Great Charters of England* sec. 39, at 239 (1900) (emphasis added). In his *Commentaries on the Laws of England*, William Blackstone wrote that "[an] absolute right, inherent in every Englishman, is that of property: which consists in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land." William Blackstone, 1 *Commentaries* sec. III, at *138.

The Founders drew on these principles when drafting the Bill of Rights. The Fifth Amendment to the Constitution of the United States, applied to the States through the Fourteenth Amendment, provides in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. In North Carolina, the requirement that government provide just compensation for a taking of private property is implicit in our state constitution. This Court has recognized

> the fundamental right to just compensation as so grounded in natural law and justice that it is part of the fundamental law of this State, and imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken. This principle is considered in North Carolina as an integral part of "the law of the land" within the meaning of Article I, Section 19 of our State Constitution.

*Long v. City of Charlotte*, 306 N.C. 187, 196, 293 S.E.2d 101, 107-08 (1982) (citations omitted).

Not all government use or regulation of private land requires a payment of just compensation; a valid exercise of the government's police power to promote public welfare does not offend constitutional property rights and is not a taking. Determining what qualifies as a valid government regulation, as opposed to an unconstitutional taking, is a complicated task, and the Supreme Court of the United States has admitted that such a determination cannot be reduced to one formula or bright line test. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224 (1986). Rather, courts must rely on "ad hoc,

CHAPEL HILL TITLE & ABSTRACT CO. v. TOWN OF CHAPEL HILL

[362 N.C. 649 (2008)]

factual inquiries into the circumstances of each particular case" to ascertain if Fifth Amendment principles are violated. *Id.* (citations omitted). However, the Supreme Court has provided guidance on critical factors to consider in any takings analysis. There are three factors that have " 'particular significance' " in these inquiries: "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " 475 U.S. at 225 (quoting *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978)).

In the instant case, the economic impact of the RCD Ordinance is determinative in deciding whether its application to the property amounts to a taking. If the effect of a government regulation "denies all economically beneficial or productive use of land," then a taking has occurred and compensation must be given to the owner, regardless of the intent of the regulation or how favorably it affects public welfare. *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1015 (1992) (citations omitted).

There is no question that regulating the use and quality of the town's water resources is within the scope of respondents' police power. Protection of the public water supply is necessary and essential to the health and welfare of the citizens of Chapel Hill. However, the noble purpose of the RCD Ordinance does not grant respondents immunity from the Fifth Amendment to the United States Constitution or the Constitution of North Carolina. This Court has indicated on numerous occasions that a "*zoning ordinance* would be deemed 'unreasonable and confiscatory,' as applied to a particular piece of property, if the owner of the affected property was deprived of all 'practical' use of the property and the property was rendered of no 'reasonable value.' " *Responsible Citizens v. City of Asheville,* 308 N.C. 255, 264, 302 S.E.2d 204, 210 (1983) (quoting *Helms v. City of Charlotte,* 255 N.C. 647, 653, 657, 122 S.E.2d 817, 822, 825 (1961)); *see also Finch v. City of Durham,* 325 N.C. 352, 364, 384 S.E.2d 8, 15 (1989) ("[T]he test for determining whether a taking has occurred in the context of a rezoning is whether the property as rezoned has a practical use and a reasonable value." (citations omitted)).

The RCD Ordinance depletes petitioners' property of all reasonable use and economic value. It is undisputed that petitioners cannot develop their property in any residential capacity without violating either the restrictive covenants imposed on the land in 1959 or the RCD Ordinance adopted by the Town of Chapel Hill in the

CHAPEL HILL TITLE & ABSTRACT CO. v. TOWN OF CHAPEL HILL

[362 N.C. 649 (2008)]

mid-1980s. The restrictive covenants at issue "run with the land," and this Court has ruled that such restrictions are interests in property. *See City of Raleigh v. Edwards*, 235 N.C. 671, 678-79, 71 S.E.2d 396, 402 (1952).[1] Petitioners have previously been enjoined from building a residence in violation of these covenants. The RCD Ordinance as enacted renders 78.5% of petitioners' property undevelopable. Respondents argue that petitioners' remaining property outside the scope of the RCD Ordinance is still developable, yet they fail to consider the effect of the restrictive covenants that run with the land. The restrictive covenants cannot be separated from the parcel, and thus, respondents must evaluate the land as they find it in their consideration of petitioners' variance request. When the restrictive covenants are properly evaluated, it is clear that application of the RCD Ordinance has deprived petitioners of all "economically beneficial or productive use" of the property. *See Lucas*, 505 U.S. at 1015. As a result of the RCD Ordinance, petitioners are left with no developable property. Thus, the wooded residential lot, which measures slightly over a half acre, has been depleted of all practical use and reasonable value. If respondents' denial of petitioners' variance request stands, then the RCD Ordinance, as applied to the property, amounts to a taking and just compensation must be paid.

To comply with the laws of this State and the Constitution of the United States, respondents must either grant petitioners a variance or justly compensate petitioners for the taking of the property. Otherwise, respondents' actions amount to an unconstitutional taking of private property in violation of the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

---

1. In *Edwards*, the City sought to erect a water tower on a lot in violation of the private restrictive covenants previously imposed on the property. 235 N.C. at 674, 71 S.E.2d at 398-99. This Court ruled that if restrictive covenants were violated by the government for public use, persons with interests in those covenants were entitled to just compensation for the taking of those property rights. *Id.* at 677-79, 71 S.E.2d at 400-02.